## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

PEDRO BRITO, on behalf of himself
and all others similarly situated,

      Plaintiff,

   v.

LG ELECTRONICS USA, INC. and LG
ELECTRONICS INC.,

      Defendants.

**JURY TRIAL DEMANDED**

**CLASS ACTION**

## CLASS ACTION COMPLAINT

Plaintiff Pedro Brito, individually and on behalf of all others similarly situated (the "Class"), through his undersigned counsel, alleges as follows against Defendants LG Electronics USA, Inc. and LG Electronics Inc. (together "LG").

## INTRODUCTION

1.     Plaintiff and the Class are purchasers of LG electric ranges (the "Ranges") that include dangerous latent defects in the design of their front-mounted burner control knobs that make the Ranges susceptible to unintentional activation (the "Defect"). The control knobs on the Ranges are prone to, and do, depress and rotate as a result of minor, inadvertent contact.  When the knobs on the Ranges are accidentally and inadvertently contacted, the Ranges activate without warning to the consumer.  This unintentional activation of the Ranges' cooktops in turn creates a hazardous condition and serious risk of fire, property damage, and personal injury.

1

2.     The defective condition of the Ranges is the result of the low detent force and tiny distance the burner control knobs need to travel to be turned to the "on" position, which is inadequate to prevent unintentional activation.  In other words, the ease with which the knobs can be pushed in and rotated without resistance fails to prevent the Ranges from being activated inadvertently.

3.     Further, the control knobs are placed on the Ranges without the necessary guards to prevent such unintentional activation.

4.     The propensity of the Ranges to be unintentionally activated—*i.e.*, turned on by accident—creates a significant and largely unappreciated safety risk for Plaintiff and the Class.  This defective condition renders the Ranges hazardous and unsafe for normal and expected use.  The Defect substantially impedes the central function of the Ranges, which serve one purpose: safe cooking.

5.     Since at least 2021, LG has known that its Ranges were susceptible to unintentional activation through numerous complaints submitted by consumers to LG directly via product reviews.

6.     Because the existence of the Defect was concealed by LG, Plaintiff and the Class were deceived and deprived of the benefit of their bargain.  A range that turns on without a consumer's knowledge has no value because it cannot be used safely.  Alternatively, the Ranges have far less value than promised at the point of sale, because

a range prone to unintentional activation, and the attendant risk of harm, is much less valuable than one that operates safely.

7.     The below allegations are based upon personal knowledge as to Plaintiff's conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

9.     The United States District Court for the District of New Jersey has jurisdiction over Defendants because they reside and transact business in New Jersey, have purposely availed themselves of the laws of New Jersey, and because many of the specific events giving rise to this action occurred in New Jersey.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendants have marketed, advertised, and sold the Ranges, and otherwise conducted extensive business, within this District. In addition, both Defendants' principal place of business is in Englewood Cliffs, New Jersey.

**PARTIES**

11.     Plaintiff Pedro Brito is a citizen and resident of Miami, Florida.

12.     Defendant LG Electronics Inc., ("LGEI") is a South Korean multinational corporation located in Seoul, South Korea. LGEI designs, manufactures, and distributes Ranges for sale in this jurisdiction. LGEI's "North American subsidiary" is in Englewood Cliffs, New Jersey. LGEI also regularly monitors its wholly owned subsidiaries' financial risk arising from operating activities and regularly dispatches financial risk managers to its regional headquarters in the United States.

13.     LGEI is and has at all times relevant been in the business of manufacturing, distributing, marketing, promoting, and selling the Ranges throughout the United States and in this jurisdiction. LGEI purposely directs its conduct toward this District and engages in a continuous course of business in this District, both by intentionally locating its wholly owned subsidiary in this District and by selling thousands of ranges and other consumer goods in this District every year.

14.     Defendant LG Electronics USA, Inc. ("LGUSA") is a wholly owned subsidiary of LGEI. LGUSA is a Delaware corporation with its headquarters in Englewood Cliffs, New Jersey. LGUSA warranties products designed, manufactured, and distributed by LGEI, and it acts as LGEI's agent in the processing of warranty claims related to defects in manufacturing or materials used by LGEI during the manufacturing process.

4

15.    LGUSA is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges described herein throughout the United States and in this jurisdiction. LGUSA resides in and engages in a continuous course of business in this District and sells thousands of ranges and other consumer goods in this District every year.

16.    LGEI and LGUSA (collectively, "Defendants" and/or "LG") are in the business of manufacturing, producing, distributing, and selling consumer appliances, including Ranges, to customers throughout the United States, both directly and through its network of authorized dealers.

17.    LG is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges described herein throughout the United States and in this jurisdiction. LG resides in and engages in a continuous course of business in this District and sells thousands of ranges and other consumer goods in this District every year.

## ALLEGATIONS SPECIFIC TO PLAINTIFF BRITO

18.    On or about November 6, 2021, Mr. Brito purchased a new LG Range Model Number LSEL6335F from Best Buy—an authorized LG reseller—in Miami, Florida for approximately $1,499.99.

19.    Mr. Brito reviewed LG marketing materials, including in-store promotional materials and online advertisements, before he purchased his Range.

20.     Mr. Brito was aware that his Range was covered by a LG warranty. The warranty was included in the user manual that came with his Range. The warranty provides that LG warrants against defects in materials and workmanship for one year. Absent this warranty, Mr. Brito would not have purchased the LG Range.

21.     Mr. Brito purchased the Range for personal, family, or household use.

22.     Mr. Brito uses, and at all times has used, his Range in a normal and expected manner.

23.     Mr. Brito's Range was delivered to his home on or around November 6, 2021.  Shortly thereafter, Mr. Brito began noticing that his Range would turn on inadvertently and without warning.

24.     On August 5, 2022, Mr. Brito's Range activated without his knowledge. While Mr. Brito and his wife were eating dinner in their bedroom, they both began to smell smoke.  Mr. Brito quickly returned to the kitchen to find an empty UberEATS bag, left adjacent to the Range's cooktop, on fire.  Mr. Brito immediately turned off the Range and placed the bag in the sink to extinguish the flames.  Black smoke filled the house, but fortunately no one was injured.

25.     Mr. Brito later contacted Best Buy about his Range and the Defect.  A Best Buy representative re-directed Mr. Brito to LG.  Upon speaking with a representative from LG, Mr. Brito was assured that LG would be send someone out to investigate.  But no such investigator ever contacted Mr. Brito or came to his house.

26.     Before purchasing his Range, Mr. Brito did not and could not have known that the LG Range suffered from the Defect.  Had LG disclosed the Defect prior to his purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Mr. Brito would not have purchased the Range or would have paid substantially less.  As a direct result of LG's conduct, Mr. Brito has suffered significant economic injury.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.     The Ranges

27.     The Ranges each have front-mounted knobs that control the cooktop's burners, for example:[1]



---

[1]  https://www.lg.com/us/cooking-appliances/lg-lsel6335f-electric-range (Model Number LSEL6335F, which is the model owned by Plaintiff Brito).

28.    The models at issue include, but are not limited to, LSEL6335F and all models containing substantially similar controls.

29.    The National Home Builders Association states that the useful life of an electric range is 13 to 20 years, with 16 years being the average.[2]

**B.    The Defect**

30.    Consumers reasonably expect that Range burners can only be activated by intentional and deliberate action. Stated another way, consumers would not anticipate that inadvertent contact with the Ranges' burner controls—while cooking or performing other activities in its proximity, or by pets or children—will activate the Range burners.  However, because of the Defect, inadvertent contact with the burner controls may, and has, resulted in unintended activation of the Range burners.  Indeed, inadvertent contact with burner controls by pets and children has caused burners to activate and create fires.

31.    Unfortunately, and unbeknownst to consumers, because of the Defect, each knob on the Ranges activates a corresponding burner through a single smooth motion—a push motion with a twist—requiring minimal force and distance.  This design is susceptible to unintentional activation rendering the Ranges dangerously defective.

_____

[2] https://www.mrappliance.com/expert-tips/appliance-life-guide/.

32.     The process to activate a burner should be and is intended to be the result of two separate and distinct purposeful actions: a first action (pushing the control knob in), followed by a second action (rotating the knob to the desired heating level).

33.     The user manual for the model Range purchased by Mr. Brito, for instance, describes the activation process in the manner depicted below:

## 32  OPERATION

**NOTE**

- It is normal for the surface elements to cycle on and off during cooking, even on higher settings. This will happen more frequently if cooking on a lower temperature setting.



❶ SINGLE

❷ WARM ZONE

❸ DUAL

❹ TRIPLE

**NOTE**

- It is normal to see a very faint red ring around the outer edge of a dual or triple element when using it as a single element at a high heat setting. This is only a reflection from the bright glow of the center element and is not a malfunction.

## Using the Cooktop Elements

### ⚠ CAUTION

- Only use cookware and dishes that are safe for oven and cooktop use.
- Always use oven mitts when removing food from the cooktop and oven.
- Do not place sealed containers on the cooktop.
- Do not use plastic wrap to cover food while on the cooktop. Plastic may melt onto the surface and be very difficult to remove.
- Never leave food on the cooktop unattended. Spillovers can cause smoke. Greasy spillovers may catch on fire.
- The surface element may appear to have cooled after it has been turned off. The element may still be hot and touching the element before it has cooled sufficiently can cause burns.
- Match the size of the cooktop element to the size of the cookware in use. Using a large element for a small pan wastes heating energy, and the exposed surface of the element is a burn or fire hazard.

**NOTE**

- Hot Surface Indicator
  - The hot surface indicator light glows as long as any surface cooking area is too hot to touch.
  - It remains on after the element is turned off and until the surface has cooled to approximately 150 ˚F.

### Turning on a Single Element

**1**  Push the Single element knob in ①.

**2**  Turn the knob in either direction to the desired setting ②.
- The control knob clicks when it is positioned at **OFF**, **HI** and **LO**.



| Heating element | |
|---|---|
| | |
| OFF | ON |

**NOTE**

- **HI** is the highest temperature available.
- **LO** is the lowest temperature available.

### Turning on a Dual Element

There is one dual element located in the left front position. Use the dual element as a dual or single element.

**1**  Push in the appropriate knob ①.

**2**  Turn the knob to use it as a single element or a dual unit ②.
- To use it as a single element, turn the knob counterclockwise.
- To use it as a dual unit, turn the knob clockwise.

10

ENGLISH



| | Icon Type 1 | Icon Type 2 |
|---|---|---|
| ❶ Dual | • • | ◎ |
| ❷ Single | • | ○ |

| | Icon Type 1 | Icon Type 2 |
|---|---|---|
| ❷ Dual | • • | ◎ |
| ❸ Triple | • • • | ◎ |

| Single | Dual | Triple |
|---|---|---|
| | | |
| C | B | A |

| Heating with inner (smaller) element only | Heating with both elements together |
|---|---|
| | |
| B | A |

### Turning on a Triple Element (On Some Models)

There is one triple element that can be used as either a single, dual or triple element.

**1** Push in the appropriate knob ①.

**2** Turn the knob to use it as a single, dual or triple element.
- To use it as a single element, turn the knob counterclockwise.
- To use it as a dual element, turn the knob clockwise to the dual position.
- To use it as a triple element, turn the knob clockwise to the triple position.



| | Icon Type 1 | Icon Type 2 |
|---|---|---|
| ❶ Single | • | ○ |

### Turning on the Warm Zone

⚠ **CAUTION**
- FOOD POISON HAZARD : Bacteria may grow in food at temperatures below 140 °F.
  - Always start with hot food. Do not use the warm setting to heat cold food.
  - Do not use the warm setting for more than 2 hours.

The Warm Zone, located in the back center of the glass surface, will keep hot, cooked food at serving temperature. Use the Warm Zone to keep food warm after it has already been cooked. Attempting to cook uncooked or cold food on the Warming Zone could result in a food-borne illness.

**1** Push the **Warm Zone** element knob in ①.

**2** Turn the knob in either direction to the desired setting ②.
- The control knob clicks when it is positioned at **OFF**, **HI** and **LO**.



**NOTE**
- For best results, food on the warmer should be kept in its container or covered with a lid or aluminum foil to maintain food quality.

34.     However, because of the low detent force and miniscule distance the control knobs need to travel to allow users to turn on their cooktops, the burners are often inadvertently activated by a single continuous motion.

35.     All of the Ranges are also uniformly defective because they all fail to appropriately guard against unintentional activation.  The design of the Ranges puts no space between the consumer and the hazard.  There are no guards that reduce the risk of unintentional activation during cleaning or other inadvertent contact made by a user, bystander, child, or pet.

36.     While some of the Ranges may contain an oven handle that could have a guarding effect, its design is wholly insufficient to act as an effective guard or barrier. As an initial matter, the outermost burner control knobs in each of the Ranges protrude further than the oven handles themselves—therefore eliminating any guarding property they may have. Moreover, any such guarding effect is further blunted by the oven handles' rounded (rather than squared) design, which permits inadvertent contact.

37.     The Defect renders LG Ranges unusable for their intended central purpose: safe cooking.  Unintentional activation of the Range burners allows them to reach extreme temperatures, creating a fire danger.

38.     The Ranges are defective at the point of sale. Consumers could not reasonably know about the defect at the point of sale and could not discover the defect with a reasonable investigation at the time of purchase or delivery because a reasonable

inspection by a consumer would not reveal whether the materials of the Ranges, the design of the Ranges, and/or the manufacturing processes related to the Ranges render them unsafe for normal and expected use.

### C.    LG's Knowledge of the Defect

39.    At all relevant times, LG knew that the Ranges it marketed and sold were prone to unintentional activation, and, therefore, that the Ranges were inherently defective, unmerchantable, and unfit for their intended use.

40.    Consumers have submitted complaints about the Defect directly to LG via reviews posted to its website.  A sampling of those complaints, and LG's responses, is below.[3]

---

[3] https://www.whirlpool.com/kitchen/cooking/ranges/double-oven-freestanding/p.6.0-cu.-ft.-gas-double-oven-range-with-ez-2-lift-hinged-grates.wgg745s0fs.html .

★★★★★ E204 · a year ago

⛪ Incentivized Review

### CONCERNING KNOBS AND CONTROL PANEL FAULTY

I wanted to give this oven 5*, but we only used it for 2 days before the control panel stopped working. We are on day 16 without an oven, and have no idea when the new panel will come in. The main issue I have with this stove is how easily the knobs can be turned with only brushing up against them - it's definitely surprising, not a stove I'd want to have with children around.

**⊙ Pros:** Style/Design

Recommends this product ✗ No

**Quality**

**Features**

**Value**

Helpful?   Yes · 2    No · 0    Report

Comment

### RESPONSE FROM LG ELECTRONICS:

LGE Social Media · a year ago

We hate hearing you are having an issue with your unit. We'd like to gather more information to see if we can help. Please contact LG Customer Support via private message on Facebook @LGUSSupport and use #VOC in your first message to our social media support team. Please be sure to provide your contact information, model/serial numbers, and date of purchase so that we can better investigate and quickly assist you with a resolution, where possible. We apologize for any inconvenience this has caused. ^Daphane

★★★★★ Djake13 · 6 months ago

⛪ Incentivized Review

### LOOKS GREAT

A little louder then expected due to the fan. Air fry feature is nice. First time I bought an oven with knobs on the front and that was a mistake for me. Anytime time you brush against them it changes the setting. They are very sensitive. I would go back to the old way if possible.

Recommends this product ✗ No

**Quality**

**Features**

**Value**

Helpful?   Yes · 0    No · 0    Report

Comment

### RESPONSE FROM LG ELECTRONICS:

Social Media · 6 months ago

We hate to hear this and thank you for this feedback. We will be happy to pass this along to our product developers.^Sandy

**D.**     **LG's Deficient Warranty Service**

41.     LG provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship.  Such a warranty was included in the user manual for the model Range purchased by Mr. Brito.

42.     Upon information and belief, LG routinely denies warranty claims arising from the Defect.

43.     In addition to the express warranty, LG marketed, advertised, and warranted that the Ranges were of merchantable quality and fit for their intended purpose. LG also marketed, advertised, and warranted that the Ranges were free from defects and did not pose an unreasonable risk to persons or property. However, a range that can be activated unintentionally is not fit for its intended purposes and would not pass without objection in the trade.

44.     Federal law mandates that any manufacturer or seller offering a product to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty.

45.     LG has not implemented an effective remedy for consumers who are at risk because of the Defect.  And despite being made aware of the Defect, LG has failed to provide effective repairs.

**E.**      **Injuries and Risk of Imminent Harm to Plaintiff and the Class**

46.     Plaintiff and the other Class purchased their Ranges solely for their personal, residential purposes and only used the Ranges as intended and in accordance with the operating instructions provided by LG.

47.     In light of the Defect, Plaintiff and other Class Members paid far more than the reasonable value of the Range, and would have paid substantially less, or not have purchased a Range at all, had LG adequately disclosed the Defect.

48.     LG has profited and continues to profit from the sale of defective Ranges by failing to disclose the above-described Defect and continuing to sell Ranges at prices well above their reasonable value.

49.     As a direct and proximate result of LG's false warranties, misrepresentations, and failure to disclose the Defect in these Ranges, Plaintiff and the Class have purchased the Ranges and have suffered injury as a result.

50.     As a direct and proximate result of LG's concealment of the Defect, its failure to warn its customers of the Defect and the safety risks posed by the Ranges, and its failure to remove the defective Ranges from consumers' homes or otherwise remedy the Defect, Plaintiff and the Class purchased LG's defective and unsafe Ranges and, in many cases, use them in their homes to this day. Had Plaintiff and the Class known of this serious safety risk, they would not have purchased the Ranges, would

have paid substantially less for their Ranges than they paid, and/or would have removed them from their homes as a result of the risk of unintentional activation.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule

51.    The causes of action alleged accrued upon discovery of the defective nature of the Ranges. Because the Defect is latent, and LG concealed it, Plaintiff and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation. Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on LG's concealment of the Defects.

### B.    Fraudulent Concealment

52.    Any applicable statutes of limitation have been tolled by LG's knowing, active, and ongoing concealment and denial of the facts as alleged herein.

53.    LG was and is under a continuous duty to disclose to Plaintiff and the Class the true character, quality and nature of the Ranges, particularly with respect to the serious risks to public safety presented by the Ranges.

54.    At all relevant times, and continuing to this day, LG knowingly, affirmatively and actively misrepresented and concealed the true character, quality, and nature of the Ranges and sold the Ranges into the stream of commerce as if they were safe for use.

17

55.     Given LG's failure to disclose this non-public information, over which LG had exclusive control, about the defective nature of the Ranges and attendant safety risks—and because Plaintiff and Class Members could not reasonably have known that the Ranges were thereby defective—Plaintiff and Class Members reasonably relied on LG's assurances of safety. Had Plaintiff and Class Members known that the Ranges pose a safety risk to the public, they would not have purchased the Ranges.

56.     Plaintiff and the Class have been kept ignorant by LG of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and the Class could not reasonably have discovered the true, latently defective nature of the Ranges.

**C.     Estoppel**

57.     LG was and is under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Ranges.  LG knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Ranges, and the concealment is ongoing.  LG knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them.  Plaintiff reasonably relied on LG's assurances of safety. For these reasons, LG is estopped from relying on any statute of limitations in defense of this action.

58.     Additionally, LG is estopped from raising any defense of laches due to its own conduct as alleged herein.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action on his own behalf and on behalf of the following Class and Subclass pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

### Nationwide Class

All residents of the United States and its territories who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale.

### Florida Sub-Class

All residents of Florida who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to Florida's law of implied warranty, any state express warranty claim that is materially similar to Florida's law of express warranty, and any state consumer fraud claim that is materially similar to Florida's law of consumer fraud.

60.    The Class and the Subclass are referred to collectively as the "Class" for convenience.  Excluded from the Class and Subclass are LG, its affiliates, employees, officers, and directors; and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify, change, or expand the Class definitions above in response to discovery and/or further investigation.

61.    *Numerosity*.  Upon information and belief, the class is so numerous that joinder of all members is impracticable.  As of Q1 2019, LG accounted for 15.7% of

the market share in the North American home appliances market.  The Class and Subclass therefore must contain, at the very least, hundreds of members each.

62.  **_Commonality_**.  The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Ranges' common design, whether the design is defective, whether the defective design poses a safety risk, LG's knowledge of the Defect, the uniform diminution in value of the Ranges, and the corresponding unjust enrichment to LG. The common questions of law and fact include, but are not limited to, the following:

a.   Whether the Ranges pose unreasonable safety risks to consumers;

b.   Whether LG knew or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c.   Whether LG concealed the safety risks its Ranges pose to consumers;

d.   Whether the safety risks the Ranges pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a range;

e.   Whether the Ranges possess a material Defect;

f.   Whether LG knew or should have known of the inherent Defect in the Ranges when it placed them into the stream of commerce;

g.   Whether LG concealed the Defect from consumers;

h.   Whether the existence of the Defect are material facts reasonable purchasers would have considered in deciding whether to purchase a range;

i.   Whether the Ranges are merchantable;

j.   Whether the Ranges are fit for their intended use;

k.   Whether LG was unjustly enriched by the sale of defective Ranges to the Plaintiff class;

l.   Whether any false warranties, misrepresentations, and material omissions by LG concerning its defective Ranges caused Class Members' injuries; and

m.   Whether LG should be enjoined from further sales of the Ranges.

63.   ***Typicality***.  Plaintiff has the same interest as all members of the classes he seeks to represent, and all of Plaintiff's claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiff and all Class Members own or owned a Range designed or manufactured by LG with the uniform Defect. All the claims of Plaintiff and Class Members arise out of LG's placement of a product into the marketplace it knew was defective and posed safety risks to consumers, and from LG's failure to disclose the known safety risks and Defect. Also typical of Plaintiff and Class Members' claims are LG's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Ranges, LG's conduct in concealing the Defect in the Ranges, and Plaintiff's and Class members' purchase of the defective Ranges.

21

64.    *Adequacy*. Plaintiff will fairly and adequately represent and protect the interest of the Class Members: Plaintiff's interests align with those of the Class Members, and Plaintiff has no fundamental conflicts with the Class. Plaintiff has retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

65.    *Predominance and Superiority*.  The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. LG has acted in a uniform manner with respect to the Plaintiff and Class Members.

66.    LG is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for LG's wrongful conduct as alleged herein.

67.    The concealed safety risks described above support swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

68.     Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of LG's unlawful and wrongful conduct. Without a class action, Class Members will continue to suffer the undisclosed risks attendant to the Ranges and incur monetary damages, and LG's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69.     There will be no undue difficulty in the management of this litigation as a class action.

70.     Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all Class Members and materially advance the litigation.

71.     *Ascertainability*.  The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of certain Ranges, and class membership can be determined using receipts, photographs, ownership documentation, and records in LG's and other databases.

72.     *Injunctive and Declaratory Relief*.  LG has acted and refused to act on grounds that apply generally to the Class, so injunctive and/or declaratory relief is appropriate with respect to the entire Class. LG made uniform representations and warranties to the Class as a whole, LG concealed facts from and made material

misrepresentations to the Class as a whole, and LG has destroyed and may still be destroying evidence relevant to the allegations of the Class.

## CLAIMS FOR RELIEF

### Count I
*Violation of the New Jersey Consumer Fraud Act*
**N.J.S.A. 56:8-1, et seq.**
**(On Behalf of the Nationwide Class)**

73.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the Nationwide Class.

75.     The New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et seq.) ("NJCFA") states, in relevant part:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise. . . ." N.J.S.A. 56:8-2.

76.     Plaintiff and Class Members are consumers who purchased Ranges for personal, family, or household use.

77.     The advertisement, promotion, distribution, supply, or sale of the Ranges is a "sale or advertisement" of "merchandise" governed by the NJCFA.

78.     Before Plaintiff's and Class Members' purchase of the Ranges, LG violated the NJCFA by making:

24

a.   uniform representations that its Ranges were of a particular standard, quality, or grade when they were not and are not, and that they would perform as represented when they did not, as set forth above; and

b.   false and/or misleading statements about the capacity and characteristics of the Ranges, as set forth above, that were unfair, deceptive, or otherwise fraudulent, had and continue to have the capacity to, and did, deceive the public and cause injury to Plaintiff and Class Members.

79.   LG, in its communications with and disclosures to Plaintiff and Class Members, intentionally concealed or otherwise failed to disclose that the Ranges included design Defects that pose a safety risk to consumers and render the Ranges fire risks.

80.   Plaintiff and Class Members reasonably expected that the Ranges would allow for safe cooking, and not present a fire hazard, both before and at the time of purchase, and reasonably expected that LG did not design the Ranges to incorporate material Defects known to LG, and that the Ranges would perform as represented by LG in its promotional materials, service manuals, and owner's manuals. These representations and affirmations of fact made by LG, and the facts it concealed or failed to disclose, are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely on in deciding whether to purchase a Range. Moreover, LG intended for consumers, including Plaintiff and Class Members, to rely on its assurances regarding the Ranges' purported safety.

81.     LG had exclusive knowledge that the Ranges had and have the Defects, which gave rise to a duty to disclose these facts. LG breached that duty by failing to disclose these material facts.

82.     The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances. There is a strong public interest in consumer appliance safety, as well as in truthfully advertising and disclosing consumer appliance defects that pose a risk to property and life.

83.     Had Plaintiff and Class Members known about the design Defects and accompanying safety risks, and/or that the Ranges did not operate as advertised, they would not have purchased the Ranges or would have paid less than they did for them. As a direct and proximate result of LG's actions, Plaintiff and Class Members have suffered ascertainable loss and other damages.

84.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Nationwide Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

85.     New Jersey has a significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair. LG's headquarters and principal place of business are in Englewood Cliffs, New Jersey. LG

also owns property and conducts substantial business in New Jersey, and therefore New Jersey has an interest in regulating LG's conduct under New Jersey's laws. LG's decision to reside in New Jersey and avail itself of New Jersey's laws render the application of New Jersey law to the claims at hand constitutionally permissible.

86.     The application of New Jersey's laws to the proposed Nationwide Class members is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiff and the proposed Nationwide Class members, and New Jersey has a greater interest in applying its laws here than any other interested State.

**Count II**
***Fraud by Omission***
**(On Behalf of the Nationwide Class, or Alternatively,
the Florida Subclass)**

87.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein

88.     Plaintiff brings this claim individually and on behalf of the Nationwide Class or, in the alternative, on behalf of the Florida Subclass under that state's respective laws.

89.     LG made material omissions concerning a presently existing or past fact in violation of substantially identical common law.  LG did not fully and truthfully disclose to its customers the true nature of the Defect.  A reasonable consumer would

not have expected the Defect in a new Range and especially not a Defect that rendered the Range unsafe and unusable for ordinary purposes.

90.     LG omitted to disclose the Defect with the intent that Plaintiff and Class Members rely upon the omission.

91.     The facts concealed, suppressed, and not disclosed by LG to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Ranges, or to pay a lesser price.

92.     LG had a duty to disclose the true quality, and safety risks of the Ranges because the knowledge of the Defect and its details were known and/or accessible only to LG, LG had superior knowledge and access to the relevant facts, and LG knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members. LG also had a duty to disclose because it made many partial representations about the qualities and reliability of its ranges, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual unsafe design of their ranges.

93.     Had Plaintiff and the Class known about the defective nature of the Ranges, they would not have purchased the Ranges or would have paid less.

94.     Plaintiff and Class Members reasonably relied to their detriment upon LG's material omissions and suffered damages as a result.  LG's conduct was willful, wanton, oppressive, reprehensible, and malicious.  Consequently, based upon all the

facts as alleged herein, Plaintiff and Class Members are entitled to an award of punitive damages.

## Count III
### *Violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA),* **Fla. Sta. § 501.201 *et seq.*** **(On behalf of the Florida Subclass)**

95.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

96.     Plaintiff Pedro Brito brings this claim under the laws of Florida, individually and on behalf of the Florida Subclass.

97.      Plaintiff and the Florida Subclass Members are "consumers" as defined by Fla. Stat. § 501.203(7).

98.     LG engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

99.     The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).

100.   LG's acts and practices, described herein, are unfair in violation of Florida law for the reasons stated below.

101.   In the course of its business, LG concealed and suppressed material facts concerning the Ranges. LG failed to disclose the Defect. LG also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, concealment, suppression or omission of any material fact with intent that others rely

upon such concealment, suppression or omission, in connection with the sale of the Ranges.

102.   LG thus violated the FDUTPA by, at a minimum, employing deception, deceptive acts or practices, fraud, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Ranges.

103.   LG intentionally and knowingly misrepresented material facts regarding the Ranges with intent to mislead Plaintiff and the Florida Subclass members into relying upon LG's omissions when deciding to purchase Ranges.

104.   LG owed Plaintiff and the Florida Subclass a duty to disclose the true nature of the Ranges because Defendant: (a) possessed exclusive knowledge about the Defect; (b) intentionally concealed the foregoing from Plaintiff and the Florida Subclass; and (c) made incomplete representations about the Ranges, while purposefully withholding material facts from Plaintiff and the Florida Subclass that contradicted these representations.

105.   LG knew about the Defect at time of sale. LG acquired additional information concerning the Defect after the Ranges were sold but continued to conceal information.

106.   LG knew or should have known that its conduct violated the FDUTPA.

107.   LG's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff.

108.   By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition.

109.   Defendants' acts and practices have deceived and/or are likely to deceive members of the consuming public and the members of the Class.

110.   Plaintiff and the Florida Subclass suffered ascertainable loss and actual damages as a direct and proximate result of LG's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Florida Subclass members who purchased the Ranges would not have purchased them or would have paid significantly less if the Defect had been disclosed.

111.   LG had an ongoing duty to Plaintiff and Florida Subclass to refrain from unfair and deceptive practices under the FDUTPA. All owners of the Ranges suffered ascertainable loss in the form of the diminished value of their Ranges as a result of LG's deceptive and unfair acts and practices made in the course of LG's business

112.   Plaintiff and Florida Subclass members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and reasonable attorneys' fees under Fla. Stat. § 501.2105(1).

113.   Plaintiff and the Florida Subclass also seek an order enjoining LG's unfair and deceptive acts or practices pursuant to Fla. Stat. § 501.211, and any other just and proper relief available under the FDUTPA.

**Count IV**
***Breach of Express Warranty***
**(On Behalf of the Florida Subclass)**

114.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

115.   Plaintiff Brito brings this Count on behalf of himself and the Florida Subclass against Defendant LG.

116.   In connection with the purchase of each Range, Defendant LG provides an express warranty ("Warranty"), pursuant to which for a period of one year LG will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product.

117.   1n addition to the written warranties LG issued, LG expressly warranted several attributes, characteristics, and qualities, as set forth above.

118.   Furthermore, the Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Brito and the Florida Subclass members whole and because Defendant LG has failed and/or refused to adequately provide the promised remedies.

119.   Accordingly, recovery by Plaintiff and the Florida Subclass members is not limited to the warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Florida Subclass members seek all remedies as allowed by law.

120.   Also, as alleged in more detail herein, at the time that LG warranted and sold the Ranges, it knew that the Ranges did not conform to the warranties and were inherently defective, and LG wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Ranges. Plaintiff Brito and the Florida Subclass members were therefore induced to purchase the Ranges under false and/or fraudulent pretenses.

121.   Moreover, many of the damages flowing from the Ranges cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to LG's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff Brito and the Florida Subclass members' remedies would be insufficient.

122.   LG has been provided notice of these issues by numerous complaints as described herein.

123.   As a direct and proximate result of LG's breach of express warranties, Plaintiff Brito and the other Florida Subclass members have been damaged in an amount to be determined at trial.

## Count V
### *Breach of the Implied Warranty of Merchantability*
### (On behalf of the Florida Subclass)

124.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

125.   Plaintiff brings this Count on behalf of himself and the Florida Subclass against Defendant.

126.   LG impliedly warranted that the subject Ranges, which LG designed, manufactured, or sold, were merchantable, fit for the ordinary purposes for which they were intended to be used, and were not otherwise injurious to consumers. LG breached its implied warranty of merchantability when it designed, manufactured, distributed, or sold the Ranges in an unsafe and un-merchantable condition.

127.   These Ranges, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which ranges are used.

128.   Specifically, the Ranges are inherently defective in that they include dangerous latent defects in the design of their front-mounted burner control knobs that make the Ranges susceptible to unintentional activation.  This unintentional activation

of the Ranges' cooktops in turn creates a hazardous condition and serious risk of fire, property damage, and personal injury.

129.   Plaintiff and each of the members of the class have had sufficient direct dealings with either LG or its agent dealerships to establish privity of contract between LG, on the one hand, and plaintiff and each of the members of the class, on the other hand. Notwithstanding, privity is not required because plaintiff and each of the members of the class are the intended beneficiaries of LG's written warranties and its contractual relationships with LG dealerships. The dealers were not intended to be the ultimate consumers of the subject Ranges, and have no rights under the warranty agreements provided by LG. LG's express warranties were designed for and intended to benefit the consumers only. Plaintiff and the members of the class were the intended consumers of the subject Ranges.

130.   Defendant was provided notice of these issues by complaints submitted by consumers to the LG website and to other consumer websites, and complaints filed against it including the instant Complaint, and by communications sent by consumers.

131.   As a direct and proximate result of LG's breach of the implied warranty of merchantability, Plaintiff Brito and the other Florida Subclass members have been damaged in an amount to be proven at trial and are also entitled to recover compensatory damages, including but not limited to the cost of repairs and diminution in value.

**Count VI**
*Unjust Enrichment*
**(On Behalf of the Nationwide Class, or in the alternative,**
**on behalf of the Florida Subclass)**

132.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

133.   Plaintiff Pedro Brito brings this claim on behalf of the Nationwide Class under New Jersey or, in the alternative, on behalf of the Florida Subclass under Florida state law.

134.   LG received proceeds from its intentional sale of defective Ranges with defective control knobs, which were purchased by Plaintiff and Class Members for an amount far greater than the reasonable value of the defective Ranges.

135.   In exchange for the purchase price paid by Plaintiff and Class Members, LG provided defective Ranges that are likely to pose a material risk of fire, property damage, and personal injury within their useful lives. This Defect renders the Ranges unfit, and indeed, unsafe for their intended use.

136.   Plaintiff and Class Members reasonably believed that the Ranges would function as advertised and warranted, and did not know, nor could have known, that the Ranges contained Defects at the time of purchase.

137.   LG received and is aware of the benefit conferred by Plaintiff and Class Members and has retained that benefit despite its knowledge that the benefit is unjust.

138.    Under the circumstances, permitting LG to retain the proceeds and profits from the sales of the defective Ranges would be unjust. Therefore, LG should be required to disgorge the unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Pedro Brito, individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.    An Order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    An Order appointing Plaintiff Pedro Brito as representative for the Class and appointing his counsel as lead counsel for the Class;

C.    An order awarding Plaintiff Pedro Brito and all other Class Members damages in an amount to be determined at trial for the wrongful acts of LG;

D.    A Declaration that the Ranges are defective and pose a serious safety risk to consumers and the public;

E.    An Order enjoining LG, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective Ranges; requiring LG to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Ranges; and requiring LG to preserve all evidence relevant to this lawsuit and notify Range owners with whom it comes in contact of the pendency of this and related litigation;

F.    Nominal damages as authorized by law;

G.    Restitution as authorized by law;

H.    Punitive damages as authorized by law;

I.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

J.      An order awarding attorney's fees pursuant to applicable Federal and State law;

K.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

L.      Any and all other and further relief as this Court deems just, equitable, or proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Respectfully submitted,

Dated: September 29, 2022          /s/ Zachary Arbitman
                                   Alan M. Feldman*
                                   Edward S. Goldis
                                   Zachary Arbitman
                                   FELDMAN SHEPHERD WOHLGELERNTER
                                   TANNER WEINSTOCK & DODIG, LLP
                                   1845 Walnut Street, 21st Floor
                                   Philadelphia, PA 19103
                                   T: (215) 567-8300
                                   F: (215) 567-8333
                                   afeldman@feldmanshepherd.com
                                   egoldis@feldmanshepherd.com
                                   zarbitman@feldmanshepherd.com

                                   Michael F. Ram*
                                   Marie N. Appel*
                                   MORGAN & MORGAN
                                   711 Van Ness Ave, Suite 500
                                   San Francisco, CA 94102
                                   mram@forthepeople.com
                                   mappel@forthepeople.com

*Attorneys for Plaintiff and the Class*

*\*application to appear pro hac vice forthcoming*