## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEDRO BRITO, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>LG ELECTRONICS USA, INC. and LG ELECTRONICS INC.,<br><br>    Defendants. | **Case 2:22-cv-05777-JMV-JSA** |

## <u>AMENDED CLASS ACTION COMPLAINT</u>

Plaintiff Pedro Brito, individually and on behalf of all others similarly situated (the "Class"), through his undersigned counsel, alleges as follows against Defendants LG Electronics USA, Inc. and LG Electronics Inc. (together "LG").

### INTRODUCTION

1.      Plaintiff and the Class are purchasers of LG ranges (the "Ranges"), that include dangerous latent defects in the design, or in the manufacture, of their front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation (the "Defect"). The control knobs on the Ranges are prone to, and do, rotate as a result of minor, inadvertent contact. When the knobs on the Ranges are accidentally and inadvertently contacted, the Ranges actuate without warning and

1

cause the ignition of gas Range burners and heating of electric Range cooktops unbeknownst to the consumer. This unintentional actuation of the Ranges thus creates hazardous conditions—leaking gas or heating electric cooktops to extreme temperatures—and serious risk of fire, property damage, and personal injury.

2.    The Ranges span several model numbers, but they all contain the same defect and are all subject to unintentional actuation. All of the Ranges, gas and electric, contain the same, or substantially similar, front-mounted burner control knobs which, are identically or similarly designed and, as a result, are prone to, and do, rotate as a result of minor, inadvertent contact causing them to unintentionally actuate.

3.    The defective condition of the Ranges is the result of the low detent (catch that prevents motion until released) force and tiny distance the burner control knobs need to travel to be turned to the "on" position, which is inadequate to prevent unintentional actuation. In other words, the ease with which the knobs can be pushed in and rotated without resistance fails to prevent the Ranges from being actuated inadvertently.

4.    Further, the control knobs are placed on the Ranges without the necessary guards to prevent such unintentional actuation.

5.    The propensity of the Ranges to be unintentionally actuated—*i.e.*,

2

turned on by accident—creates a significant and largely unappreciated safety risk for Plaintiff and the Class. This defective condition renders the Ranges hazardous and unsafe for normal and expected use. The Defect substantially impedes the central function of the Ranges, which serve one purpose: safe cooking.

6. Since at least 2016, LG has known that its Ranges were susceptible to unintentional actuation. Consumers have filed numerous incident reports about the Defect with the U.S. Consumer Product Safety Commission (the "CPSC"). Consumers have also filed complaints with LG directly via online product reviews.

7. Because the existence of the Defect was concealed by LG, Plaintiff and the Class were deceived and deprived of the benefit of their bargain. A range that turns on without a consumer's knowledge has no value because it cannot be used safely. Alternatively, the Ranges have far less value than promised at the point of sale, because a range prone to unintentional actuation, and the attendant risk of harm, is less valuable than one that operates safely.

8. The below allegations are based upon personal knowledge as to Plaintiff's conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a

citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

10.    The United States District Court for the District of New Jersey has jurisdiction over Defendants because they reside and transact business in New Jersey, have purposely availed themselves of the laws of New Jersey, and because many of the specific events giving rise to this action occurred in New Jersey.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendants have marketed, advertised, and sold the Ranges, and otherwise conducted extensive business, within this District. In addition, both Defendants' principal place of business is in Englewood Cliffs, New Jersey.

## PARTIES

12.    Plaintiff Pedro Brito is a citizen and resident of Miami, Florida.

13.    Defendant LG Electronics Inc., ("LGEI") is a South Korean multinational corporation located in Seoul, South Korea. LGEI designs, manufactures, and distributes Ranges for sale in this jurisdiction. LGEI's "North American subsidiary" is in Englewood Cliffs, New Jersey. LGEI also regularly

4

monitors its wholly owned subsidiaries' financial risk arising from operating activities and regularly dispatches financial risk managers to its regional headquarters in the United States.

14.    LGEI is and has at all times relevant been in the business of manufacturing, distributing, marketing, promoting, and selling the Ranges throughout the United States and in this jurisdiction. LGEI purposely directs its conduct toward this District and engages in a continuous course of business in this District, both by intentionally locating its wholly owned subsidiary in this District and by selling thousands of ranges and other consumer goods in this District every year.

15.    Defendant LG Electronics USA, Inc. ("LGUSA") is a wholly owned subsidiary of LGEI. LGUSA is a Delaware corporation with its headquarters in Englewood Cliffs, New Jersey. LGUSA warranties products designed, manufactured, and distributed by LGEI, and it acts as LGEI's agent in the processing of warranty claims related to defects in manufacturing or materials used by LGEI during the manufacturing process.

16.    LGUSA is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges described herein throughout the United States and in this jurisdiction. LGUSA resides in and engages

in a continuous course of business in this District and sells thousands of ranges and other consumer goods in this District every year.

17.    LGEI and LGUSA (collectively, "Defendants" and/or "LG") are in the business of manufacturing, producing, distributing, and selling consumer appliances, including Ranges, to customers throughout the United States, both directly and through its network of authorized dealers.

18.    LG is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges described herein throughout the United States and in this jurisdiction. LG resides in and engages in a continuous course of business in this District and sells thousands of ranges and other consumer goods in this District every year.

### ALLEGATIONS SPECIFIC TO PLAINTIFF BRITO

19.    On or about November 6, 2021, Mr. Brito purchased a new LG Range Model Number LSEL6335F from Best Buy—an authorized LG reseller—in Miami, Florida for approximately $1,499.99.

20.    Mr. Brito reviewed LG marketing materials before he purchased his Range.  Based on those materials, Mr. Brito believed that the Range would operate in a safe manner.

21.     The salesperson at Best Buy informed Mr. Brito that the Range was covered by a one-year warranty.  Absent this warranty, Mr. Brito would not have purchased the LG Range.

22.     The warranty was included in the user manual that came with his Range. The warranty provides that LG warrants against defects in materials and workmanship for one year.

23.     Mr. Brito purchased the Range for personal, family, or household use.

24.     Mr. Brito uses, and at all times has used, his Range in a normal and expected manner.

25.     Mr. Brito's Range was delivered to his home on or around November 6, 2021.  Shortly thereafter, Mr. Brito began noticing that his Range would turn on inadvertently and without warning.

26.     On August 5, 2022, Mr. Brito's Range actuated without his knowledge. While Mr. Brito and his wife were eating dinner in their bedroom, they both began to smell smoke.   Mr. Brito quickly returned to the kitchen to find an empty UberEATS bag, left adjacent to the Range's cooktop, on fire.  Mr. Brito immediately turned off the Range and placed the bag in the sink to extinguish the flames.  Black smoke filled the house, but fortunately no one was injured.

27.    Mr. Brito later contacted Best Buy about his Range and the Defect.  A Best Buy representative re-directed Mr. Brito to LG.  Upon speaking with a representative from LG, Mr. Brito was assured that LG would send someone out to investigate.

28.    In or around August or September, 2022, a service technician made two visits to Mr. Brito's home to address the Defect in his Range.

29.    On the visit first, the service technician examined the Range and allegedly placed an order for parts that were supposed to address the Defect.

30.    On the second visit, the service technician returned to Mr. Brito's home with a replacement glass top for his Range.  Mr. Brito asked why the service technician did not bring a replacement part to fix the Defect, such as replacement knobs that were not susceptible to unintentional actuation.  The service technician informed Mr. Brito that the Defect was a known issue at LG; however, LG did not have any fixes for the Defect.  The service technician advised Mr. Brito to remove the Range knobs when the appliance was not in use.  This solution is unacceptable.

31.    On or around September 22, 2022, an LG representative called Mr. Brito and asked if he had incurred damage from the fire that occurred on August 5, 2022.  Mr. Brito advised that he was represented by counsel and would not answer any questions.

32.      On or around September 26, 2022, an LG representative emailed Mr. Brito advising him that his inquiry would be closed because LG did not receive the documents and/or proof of purchase that it requested.

33.      Before purchasing his Range, Mr. Brito did not and could not have known that the LG Range suffered from the Defect.  Had LG disclosed the Defect prior to his purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Mr. Brito would not have purchased the Range or would have paid substantially less.  As a direct result of LG's conduct, Mr. Brito has suffered significant economic injury.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.      The Ranges

34.      The Ranges each have front-mounted knobs that control the cooktop's burners, for example:[1]

---

[1]      https://www.lg.com/us/cooking-appliances/lg-lsel6335f-electric-range  (Model Number LSEL6335F, which is the model owned by Plaintiff Brito)



35.    The models at-issue include, but are not limited to: LSEL6335F, LSEL6335D, LSEL6337F, LSEL6333D, LTE4815BD, LSE4616BD, LSE4611ST, LSE4617ST, LDG4313ST, LDE4413ST, LSE4613ST, LSG4513ST, and all other models (discontinued or still available for sale) containing substantially similar front-mounted burner controls, which all have a similar actuation mechanism.

36.    The National Home Builders Association states that the useful life of a gas range is 15 to 23 years, with 19 years being the average.[2]  The National Home Builders Association also states that the useful life of an electric range is 13 to 20 years, with 16 years being the average.[3]

### B.    The Defect

---

[2]    https://www.mrappliance.com/expert-tips/appliance-life-guide/

[3]    *Id.*

37.    Consumers reasonably expect that Ranges can only be actuated by intentional and deliberate action. Stated another way, consumers would not anticipate that inadvertent contact with a Range's burner controls—while cooking or performing other activities in its proximity, or by pets or children—will actuate the Range.  However, because of the Defect, inadvertent contact with the burner controls may, and has, resulted in unintended actuation of Ranges.  Indeed, inadvertent contact with burner controls by pets and children has caused Ranges to actuate and create fires and emit deadly gases.

38.    Unfortunately, and unbeknownst to consumers, because of the Defect, each knob actuates the Ranges through a single smooth motion—a push motion with a twist—requiring minimal force and distance.  Plaintiff alleges that this is a defect in the design, or alternatively, a manufacturing defect wherein the Ranges differ uniformly from the manufacturer's intended result or design.  The Ranges do not conform to industry standards, or to a reasonable consumer's expectation, because the knobs are susceptible to unintentional actuation rendering the Ranges dangerously defective.

39.    The process to actuate a Range should and is intended to be the result of two separate and distinct purposeful actions: a first action (pushing the control knob in), followed by a second action (rotating the knob to the desired heating level).

11

40.    The user manual for the model Range purchased by Mr. Brito, for instance, describes the actuation process in the manner depicted below:[4]

---

[4] https://www.lg.com/us/support/manuals-documents

## 32 OPERATION

**NOTE**

- It is normal for the surface elements to cycle on and off during cooking, even on higher settings. This will happen more frequently if cooking on a lower temperature setting.



❶ SINGLE

❷ WARM ZONE

❸ DUAL

❹ TRIPLE

**NOTE**

- It is normal to see a very faint red ring around the outer edge of a dual or triple element when using it as a single element at a high heat setting. This is only a reflection from the bright glow of the center element and is not a malfunction.

### Using the Cooktop Elements

**⚠ CAUTION**

- Only use cookware and dishes that are safe for oven and cooktop use.

- Always use oven mitts when removing food from the cooktop and oven.

- Do not place sealed containers on the cooktop.

- Do not use plastic wrap to cover food while on the cooktop. Plastic may melt onto the surface and be very difficult to remove.

- Never leave food on the cooktop unattended. Spillovers can cause smoke. Greasy spillovers may catch on fire.

- The surface element may appear to have cooled after it has been turned off. The element may still be hot and touching the element before it has cooled sufficiently can cause burns.

- Match the size of the cooktop element to the size of the cookware in use. Using a large element for a small pan wastes heating energy, and the exposed surface of the element is a burn or fire hazard.

**NOTE**

- Hot Surface Indicator

  - The hot surface indicator light glows as long as any surface cooking area is too hot to touch.

  - It remains on after the element is turned off and until the surface has cooled to approximately 150 °F.

### Turning on a Single Element

**1** Push the Single element knob in ①.

**2** Turn the knob in either direction to the desired setting ②.

- The control knob clicks when it is positioned at **OFF**, **HI** and **LO**.



| Heating element | |
|---|---|
|  | |
| OFF | ON |

**NOTE**

- **HI** is the highest temperature available.

- **LO** is the lowest temperature available.

### Turning on a Dual Element

There is one dual element located in the left front position. Use the dual element as a dual or single element.

**1** Push in the appropriate knob ①.

**2** Turn the knob to use it as a single element or a dual unit ②.

- To use it as a single element, turn the knob counterclockwise.

- To use it as a dual unit, turn the knob clockwise.

ENGLISH



| | Icon Type 1 | Icon Type 2 |
|---|---|---|
| ❶ Dual | • • | ◎ |
| ❷ Single | • | ○ |

| | Icon Type 1 | Icon Type 2 |
|---|---|---|
| ❷ Dual | • • | ◎ |
| ❸ Triple | • • • | ◎ |

| Heating with inner (smaller) element only | Heating with both elements together |
|---|---|
| (ring) | (ring) |
| B | A |

| Single | Dual | Triple |
|---|---|---|
| (ring) | (ring) | (ring) |
| C | B | A |

### Turning on a Triple Element (On Some Models)

There is one triple element that can be used as either a single, dual or triple element.

**1**  Push in the appropriate knob ①.

**2**  Turn the knob to use it as a single, dual or triple element.
- To use it as a single element, turn the knob counterclockwise.
- To use it as a dual element, turn the knob clockwise to the dual position.
- To use it as a triple element, turn the knob clockwise to the triple position.



| | Icon Type 1 | Icon Type 2 |
|---|---|---|
| ❶ Single | • | ○ |

### Turning on the Warm Zone

**⚠ CAUTION**
- FOOD POISON HAZARD : Bacteria may grow in food at temperatures below 140 °F.
  - Always start with hot food. Do not use the warm setting to heat cold food.
  - Do not use the warm setting for more than 2 hours.

The Warm Zone, located in the back center of the glass surface, will keep hot, cooked food at serving temperature. Use the Warm Zone to keep food warm after it has already been cooked. Attempting to cook uncooked or cold food on the Warming Zone could result in a food-borne illness.

**1**  Push the **Warm Zone** element knob in ①.

**2**  Turn the knob in either direction to the desired setting ②.
- The control knob clicks when it is positioned at **OFF**, **HI** and **LO**.



**NOTE**
- For best results, food on the warmer should be kept in its container or covered with a lid or aluminum foil to maintain food quality.

41.     However, because of the low detent force and miniscule distance the control knobs need to travel to allow users to actuate their Ranges, the Ranges are often inadvertently actuated by a single continuous motion.

42.     All of the Ranges are also uniformly defective because they all fail to appropriately guard against unintentional actuation.  The design of the Ranges puts no space between the consumer and the hazard.  There are no guards that reduce the risk of unintentional actuation during cleaning or other inadvertent contact made by a user, bystander, child, or pet.

43.     While some of the Ranges may contain an oven handle that could have a guarding effect, it is wholly insufficient to act as an effective guard or barrier.  As an initial matter, the outermost burner control knobs in each of the Ranges protrude further than the oven handles themselves—therefore eliminating any guarding property they may have. Moreover, any such guarding effect is further blunted by the oven handles' rounded (rather than squared) design, which permits inadvertent contact.

44.     The Defect renders LG Ranges unusable for their intended central purpose: safe cooking.  Unintentional actuation allows electric cooktops to reach extreme temperatures and gas Ranges to emit toxic fumes; both electric and gas Ranges present a fire risk.

45.    The Ranges are defective at the point of sale. Consumers could not reasonably know about the defect at the point of sale and could not discover the defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a consumer would not reveal whether the materials of the Ranges, the design of the Ranges, and/or the manufacturing processes related to the Ranges render them unsafe for normal and expected use.

### C.    LG's Knowledge of the Defect

46.    At all relevant times, LG knew that the Ranges it marketed and sold were prone to unintentional actuation, and, therefore, that the Ranges were inherently defective, unmerchantable, and unfit for their intended use.

47.    Consumers have submitted numerous incident reports about the Defect to the U.S. Consumer Product Safety Commission ("CPSC").  The following is a sample of those complaints, which demonstrate that LG knew about the Defect by at least 2016. The CPSC transmitted all these complaints to Defendants.

48.    Report sent to LG on June 22, 2016 regarding a Range Model No. LDG4313ST:[5]

---

[5] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1571885.

**Incident Details**

**Incident Description:** The consumer indicates that her oven range has really large knobs that when bumped into, turn the unit on unbeknownst to the consumer. The consumer contacted the manufacturer and explained the situation. She was informed the gas line should not turn on until a clicking sound is emitted from the unit, but it does. A Service Technician dispatched by the manufacturer changed a part that hooks to the knobs and valves but this did not fix the problem. The consumer contacted the manufacturer again and they want to send the Service Technician again but the consumer believes changing the same part for the same one it was replaced with would not fix the problem. The consumer noted service will not respond. The consumer indicates that she uses her unit on average once every day. The consumer plans on keeping the unit for at least the next thirty days in case an investigation ensues.

**Incident Date:** 12/15/2015

**Incident Location:** Home/Apartment/Condominium

49.    Report sent to LG on December 1, 2016 regarding a Range Model No. LDG4313ST:[6]

**Incident Details**

**Incident Description:** Purchased the LG 30" Freestanding Double Oven Gas Ranges (LDG4323ST) to replace our current stove. We found quickly throughout the day that we had to constantly check the knobs for the range to determine if they've been pushed on. My wife or children would use the over the range microwave and with the slightest of push from leaning forward would move the knobs on the range to allow gas or ignite. We have experienced the knobs to ignite burners while cooking/stirring pots on the two back burns almost causing an accident or catching fire. My concern elevated when the men working to complete my kitchen remodel, was grouting the back splash tile and leaned against the range which ignited causing him to get burned. Investigating why this is happening, what I can see is the controls are mounted to a front plate which is on an angle (not horizontally flat or vertically up and down like many other ranges) with large knobs that when pressed against with the front plate angle will cause the knobs to turn. I have contacted both LG and hhgregg voicing my safety concern. LG has dispatched two servicemen to inspect the range. One used video to display how quickly and easily these knobs can be accidentally turned, which he sent to the LG Korean facility. The other explained that with no downward force the knobs do not turn and are working properly. Both explained how I should purchase safety covers to be installed on my knobs. Which I explained that I did not purchase a $1,000 device that needs to be modified because of design and safety reasons. We have since had multiple incidents where we've found the range to be on with not knowing for how long. My fear is that (like other reviews and incidents I've read) something will happen that will cause injury to a family member.

**Incident Date:** 9/5/2016

**Incident Location:** Home/Apartment/Condominium

50.    Report sent to LG on July 14, 2017 regarding a Range Model No. LSG4513ST:[7]

---

[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1609639.

[7] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1661952.

**Incident Details**

**Incident Description:** LG GAS stove/oven. You push in the front mounted knobs on the gas stove and it ignites the burners. You bump the knob and the burners ignite. The knobs are at an adult waist height and a child can push them. I have almost caught my clothes on fire while stirring something on the stove and ignite another burner. There are pictures and numerous complaints on the internet. People are removing the knobs when small children are around. Because LG Refuses to correct this issue. It is extremely dangerous. A small child is going to be severely burned and adults as well This oven needs to be recalled.

**Incident Date:** 5/3/2017

**Incident Location:** Home/Apartment/Condominium

51.    Report sent to LG on August 15, 2022 regarding a Range Model No. LSEL6337F:[8]

**Incident Details**

**Incident Description:** We purchased an LG slide in range about 6 weeks ago-model number Lsel 6337f. The knobs for the stove top burners are turned on (accidentally) by the very slightest bump. At least twice I have scorched dish towels because I didn't know the burner (that I wasn't supposed to be using) was on. Until the towels began to smoke and smell I had no idea the burners were on. We've had this range for about 8 weeks and in my mind it is extremely dangerous and clearly a fire hazard. Reviews noting this are on the LG website and across the web. Several mention children accidentally turning them on. I am not aware of any injuries.

**Incident Date:** 7/8/2022

**Incident Location:** Home/Apartment/Condominium

52.    Report sent to LG on August 30, 2021 regarding Range Model No. LSE4611ST:[9]

**Incident Details**

**Incident Description:** This is an LG electric slide-in range with front controls. Anyone who leans slightly against the range can inadvertently turn on an element. You don't notice until you see the element glowing red. This has happened at least a half dozen times. Today while working in the nearby cabinets, we set somethings temporarily on the stove and then left the kitchen briefly only to hear an explosion. Rushing back into the kitchen, a can of evaporated milk had exploded all over the cabinets, OTR microwave, floor, and ceiling. A couple of boxes of macaroni were charred and burning. The stove is now unusable and clearly this model is UNSAFE for any consumers

**Incident Date:** 8/30/2021

**Incident Location:** Home/Apartment/Condominium

---

[8] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3856835.

[9] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3428484.

53.    Report sent to LG on March 28, 2016 regarding Range Model No. LDE4413ST:[10]

**Incident Details**

**Incident Description:** Ever since we bought this LG Electric range 6 months ago we have had repeated problems with the cooktop turning on accidentally when we are working in the kitchen. The knobs are large and protrude from the front of the stove at hip height. They are easily bumped and turned on without us realizing it. We have learned to be very careful and not put anything on the stove except what we are cooking. Regardless, we have repeatedly often almost been burned by turning and unexpectedly finding a blazing hot burner with nothing on it. We have limited counter space. When we are not working in the kitchen, we sometimes place pots and pans on the cooktop to dry. Today there was a pot on it drying on a dishtowel. When my husband returned from the grocery store, there was almost no space on the counters. He put one grocery bag on what little space there was on the counter and the other on the cooktop, being careful not to bump the knobs. He went out to bring the other groceries in from the car and was gone only seconds. He returned to find the groceries and the dish towel engulfed in flames and the smoke alarm screaming. Luckily, he was able to sweep everything into the sink and douse the flames with water. Upon further inspection it appeared what happened is what has frequently happened before. Despite his care not to bump the knobs, the left-most knob got bumped when he turned away from the stove, without him realizing it. Unfortunately, that knob, when it is bumped a little, turns to "Hi." More unfortunately, that knob turns on the front left burner to "Ultra-Heat" which heats to high in a matter of seconds. We are just fortunate that he returned so promptly, before the wall and ceiling in the kitchen ignited. This it the last straw for us. This electric range is a fire and burn hazard and needs to be recalled to either be replaced or modified to allow for safe use.

**Incident Date:** 3/20/2016

**Incident Location:** Home/Apartment/Condominium

54.    Report sent to LG on September 12, 2017 regarding Range Model No. LSE4613ST:[11]

**Incident Details**

**Incident Description:** 07/12/2017 Consumer contacted manufacture via email. Manufacture rep [REDACTED] responded via email and advised consumer at her cost she can purchase a knob cover for each knob from retailer or LG authorized dealer. LG admitted in the email that they knew of this problem and were working on resolving the problem!! 07/12/2017 Consumer stated there are six knobs on the front of her electric range five knobs for range top and one knob for oven, with the slightest touch(rub/bump) of the knobs they can easily be turned on. There have been multiple episodes when the range top has been accidentally turned on. She stated there was a burning smell coming from her kitchen, she noticed one of her range top knobs was on with a newspaper atop burner. A fire was in progress. She confirmed her standard poodle dog is able to turn her oven and range top knobs on several times in the pass, but yesterday (07/12/17) there were items inside the oven which a dog had turned on.. She feels this is definitely a fire and safety hazard for her family.

**Incident Date:** 7/12/2017

**Incident Location:** Home/Apartment/Condominium

55.    Report sent to LG on December 15, 2016 regarding Range Model No. LDE4413ST:[12]

---

[10] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1561718.

[11] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1678126.

[12] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1612615.

**Incident Details**

**Incident Description:** The LG Range Model LDE4413ST is a dangerous fire hazard. The overly sensitive knobs at waist height can easily turn on inadvertently when slightly brushing up against them or reaching overhead. And when the double burner knobs are brushed against either way, they are automatically on high heat. Even when these knobs are not pushed in, they will turn on the stovetop. On August 30, 2016, I left my house and returned 45 minutes later to a smoldering pile of ashes on my stovetop and a smoky house. One of the knobs were unintentionally bumped without anyone noticing. The tea canister that was on the stove burned to ashes, along with destroying the stovetop, burning part of the countertop, and causing smoke to go throughout my house. It's a good thing I arrived home when I did, because our house might not be standing today. We informed LG that day about what happened, and they sent a third party out a couple days later to assess the damage. We were in contact with [REDACTED], a claims specialist, and he told us "This is not your fault. We will take care of it." But since that conversation, we have tried to contact LG numerous times, but keep getting the run around. [REDACTED], a Sr. claims manager, finally told us that they won't take responsibility and that we need to claim it on our home owner's insurance. I have read numerous other complaints of LG ranges doing the same thing, electric as well as gas. This dangerously flawed LG range could have burned down our house. It could kill people. Is it going to take somebody dying to get this product recalled? It's a shame that LG is allowed to sell these ranges that are obviously unsafe.

**Incident Date:** 8/30/2016

**Incident Location:** Home/Apartment/Condominium

56.    Consumers have also submitted complaints about the Defect directly to LG via reviews posted to its website. The following is a sample of those complaints.

57.    Complaint to LG 3 months ago regarding a Range Model No. LSEL6335D:[13]

★★★★★ ChrisTeee · 3 months ago
LOOKS GOOD BUT HAS FAULTS

Looks great, easy to use, beautiful blue interior. But a slight bump and you may unintentionally turn it on. The knobs move too easily. This has happened multiple times to us, where you look to see one of the burners going when no one meant to turn it on.

⊕ Pros: Style/Design

Originally posted on LSEL6335F

| Quality | | |
| Features | | |
| Value | | |

Helpful?   Yes · 0    No · 0    Report

Comment

RESPONSE FROM LG ELECTRONICS:

Social Media · 3 months ago

Thank you for taking the time to communicate with LG about your experience with your LG appliances. We appreciate your feedback which helps us keep fresh perspective regarding new ways to improve our services and future product developments. ^Nikki

58.    Complaint to LG 6 months ago regarding a Range Model No.

---

[13] https://www.lg.com/us/cooking-appliances/lg-lsel6335d-electric-range/reviews.

LSEL6333D:[14]



★★★★★ Log slide in stove · 6 months ago
KNOBS ON STOVE GO AS SOON AS YOU LEAN ON

Knobs are not good for kids…… Knobs light up the stove accidentally when you lean on the knobs to clean top of stove….A dog started a fire last week when he jumped on the knob and someone left a pan with grease in it..It burnt half the kitchen…Inside Camaros recorded this!!!!!!!

Originally posted on LSEL6333F

Helpful?  Yes · 0  No · 0  Report

Comment

RESPONSE FROM LG ELECTRONICS:
Social Media  6 months ago

We hate to hear this and hope everyone is ok. We would love an opportunity to help, however we need to move to a platform that supports back and forth messaging. Please send us a private message on Facebook or Twitter using @LGUSSupport and include #VOC, your contact info and model #.^Sandy

59.    Complaint to LG 2 years ago regarding a Range Model No. LTE4815BD:[15]

---

[14] https://www.lg.com/us/cooking-appliances/lg-lsel6333d-electric-range/reviews.

[15] https://www.lg.com/us/cooking-appliances/lg-LTE4815BD-electric-range.

★☆☆☆☆ SnowedinCook · 2 years ago

**Was So Hopeful**

Incentivized Review

I've had this oven for about 6 months. It's probably the worst oven I've ever owned to include the cheap junky ones. The ovens don't hold heat or even heat up to temperature. when it says it's ready. What tipped me off was when baking a pie took over 2 hours. I bought an oven thermometer and sure enough it's a whole 50 degrees below the set temperature. Smart me, I set the temperature next time up by 50 degrees and it heated up to the actual temperature. It's like there is no 350-400 degree range. Then for fun, it jumps around in temperature the entire bake time. The cooktop is hot or cold and has the most confusing knobs to control the temperature that no one can walk up to the stove top and just use it. It takes a Youtube tutorial and I still can't keep it straight. The cooktop was hot and a piece of tinfoil was accidentally placed on the hot burner. The tinfoil actually adhered to the cooktop and etched what appears to be small holes in a couple places on the burner surface. The way the knobs are placed on the stove face makes them easily turned on or changed by clothing or small children and just about impossible to clean. I had so much hope for two small ovens over one large and the convection option was the real selling point. I'm so disappointed it's such a super piece of junk!

Recommends this product  ✗ No

Originally posted on LTE4815ST

Helpful?  Yes · 2    No · 0    Report

Comment

Response from LG Electronics:
LGE Social Media · 2 years ago

We hate to hear that your unit did not meet your expectations and/or needs. We work continuously to improve the quality of our products and anticipate market demands that drive customer satisfaction. Your feedback is especially important to us and your concerns will be shared with our marketing and product teams. If you have questions or further concerns, please reach out to our support team on Twitter via @LGUSSupport or on Facebook at https://www.facebook.com/LGUSA/. ^Daphane

60.     Complaint to LG 2 years ago regarding a Range Model No. LTE4815BD:[16]

★☆☆☆☆ Carrie B · 2 months ago

**Worst product I ever bought**

Only thing that works right is the stovetop. Digital display started quitting just after warranty ended, segment by segment. Top oven? Broiler automatically comes on when oven, not broiler, is set to 400° or above. Lower oven will not keep steady temp. Literally takes 3 times as long to cook. Knobs on front are too sensitive and turn on if you brush them so lightly you don't even notice which has led to burning items on the stove. LG's service tech put new knobs on and said to read the manual on the rest of the issues with no repair. Will never buy an LG product again.

Originally posted on LTE4815ST

Helpful?  Yes · 0    No · 0    Report

Comment

Response from LG Electronics:
Social Media · 2 months ago

We appreciate your feedback, and we're sorry to hear that you had a negative experience with your LG range. Your feedback helps us keep fresh perspective regarding new ways to improve our services and future product developments. ^Nikki

---

[16] https://www.lg.com/us/cooking-appliances/lg-LTE4815BD-electric-range.

61.     Complaint to LG 9 months ago regarding a Range Model No. LSE4616BD:[17]



★★★★★ Chipped customer · 9 months ago
HATE IT

I bought this in April of 2021. My burner did not regulate and it overheated causing a small chip in the cooktop. And it has something underneath the moves with different pan sizes. The technician said it was on top. And chips are not covered. The burners turn on with 0 effort. Whenever I lean over to use my microwave and just brushing by it. I removed the knobs so the kids didn't accidentally turn them on. The technician put them back on and said they each have a place which I already knew.

Recommends this product ✗ No

Originally posted on LSE4616ST

Helpful?   Yes · 0   No · 0   Report

Comment

RESPONSE FROM LG ELECTRONICS:
Social Media · 9 months ago

Let us help you with that! Please send us a private message on Facebook or Twitter using @LGUSSupport and include #VOC.^Sandy

62.     Complaint to LG 2 years ago regarding a Range Model No. LSE4611ST:[18]

---

[17]https://www.lg.com/us/cooking-appliances/lg-LSE4616BD-electric-range/reviews.

[18]https://www.lg.com/us/cooking-appliances/lg-LSE4611ST-electric-range/reviews.

23

63.    Complaint to LG 2 years ago regarding a Range Model No. LSE4611ST:[19]

---

[19]https://www.lg.com/us/cooking-appliances/lg-LSE4611ST-electric-range/reviews.



★★★★★ Anonymous · 2 years ago                                                                          🎁 Incentivized Review

WOULD DEFINITELY NOT BUY AGAIN

Very disappointed with several features:                                                          Quality
CLEANING GLASS CERAMIC COOKTOP
Glass top very poor quality, almost impossible to clean. Smears easily when cleaning and some cloudy spots cannot be removed, looks
horrible. Even small spills while cooking do not come off simply wiping with damp cloth. Must use cleaning cream provided with stove every    Features
time. Becomes discolored very quickly no matter how carefully it is used. Overall, very high maintenance.
SETTING TIMER & OVEN TEMPERATURE                                                                  Value
Very touchy, takes time to correct - have to keep punching + or –
TOP OF PANEL SURROUNDING KNOBS
Looks like stainless steel but likely not as scratches easily
SMALL PIECE OF RUBBER missing surrounding stove top (came that way)
KNOB CONTROLS
Safety issue, easy to hit controls and accidentally turn on.

⊕ Pros:  Style/Design

Recommends this product  ✗ No

Helpful?  Yes · 2    No · 0    Report                                                                            Comment

RESPONSE FROM LG ELECTRONICS:
LGE Social Media · 2 years ago

We are continuously working to improve the quality of our products and anticipate market demands that drive customer satisfaction. Your feedback is especially important to us and
your concerns will be shared with our product team. If you ever have any questions, please do not hesitate to reach out to our support team on Twitter via @LGUSSupport or on
Facebook at https://www.facebook.com/LGUSA/. To speak with an agent via phone, you can call 800.243.0000. We apologize for any inconvenience this caused. ^Daphane

64.     Complaint to LG 3 months ago regarding a Range Model No. LSE4617ST:[20]

★★★★★ Jayne · 3 months ago
KNOBS

I inherited this stove when I purchased my condo. It is under 3 years old. The oven bakes very well but the elements are so slow. The knobs    Quality
on the front constantly turn on when reaching into the back elements. Having had 2 other LG stoves, I'm very disappointed with this one.
                                                                                                  Features
Recommends this product  ✗ No
                                                                                                  Value
🔴LG  Originally posted on LG Canada

65.     Complaint to LG 5 years ago regarding Range Model No.

---

[20]https://www.lg.com/us/cooking-appliances/lg-LSE4617ST-electric-range/reviews.

LSE4613ST:[21]



66.   In addition, in an Ask & Answer section for Range Model No. LSGL6337F, an LG representative expressly acknowledges that the company is aware that "[t]he knobs can be turned on inadvertently if you brush against them":[22]

67.   Lastly, as explained above, certified LG appliance technicians have

---

observed unintentional actuation in Ranges in the field.

### D.    LG's Deficient Warranty Service

68.    LG provided a uniform, express one-year factory warranty against defects in materials and workmanship.  Such a warranty was included in the user manual for the model Range purchased by Plaintiff.

69.    As explained above, LG routinely denies warranty claims arising from the Defect.

70.    In addition to the express warranty, LG marketed, advertised, and warranted that the Ranges were of merchantable quality and fit for their intended purpose. LG also marketed, advertised, and warranted that the Ranges were free from defects and did not pose an unreasonable risk to persons or property. However, a range that can be actuated unintentionally is not fit for its intended purposes and would not pass without objection in the trade.

71.    Federal law mandates that any manufacturer or seller offering a product to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty.

72.    LG has not implemented an effective remedy for consumers who are at risk because of the Defect.  And despite being made aware of the Defect, LG has failed to provide effective repairs.

### E.    Injuries and Risk of Imminent Harm to Plaintiff and the Class

73.    Plaintiff and the other Class purchased their Ranges solely for their personal, residential purposes and only used the Ranges as intended and in accordance with the operating instructions provided by LG.

74.    In light of the Defect, Plaintiff and other Class Members paid far more than the reasonable value of the Range, and would have paid substantially less, or not have purchased a Range at all, had LG adequately disclosed the Defect.

75.    LG has profited and continues to profit from the sale of defective Ranges by failing to disclose the above-described Defect and continuing to sell Ranges at prices well above their reasonable value.

76.    As a direct and proximate result of LG's false warranties, misrepresentations, and failure to disclose the Defect in these Ranges, Plaintiff and the Class have purchased the Ranges and have suffered injury as a result.

77.    As a direct and proximate result of LG's concealment of the Defect, its failure to warn its customers of the Defect and the safety risks posed by the Ranges,

and its failure to remove the defective Ranges from consumers' homes or otherwise remedy the Defect, Plaintiff and the Class purchased LG's defective and unsafe Ranges and, in many cases, use them in their homes to this day. Had Plaintiff and the Class known of this serious safety risk, they would not have purchased the Ranges, would have paid substantially less for their Ranges than they paid, and/or would have removed them from their homes as a result of the risk of unintentional actuation.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule

78.    The causes of action alleged accrued upon discovery of the defective nature of the Ranges. Because the Defect is latent, and LG concealed it, Plaintiff and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation. Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on LG's concealment of the Defects.

### B.    Fraudulent Concealment

79.    Any applicable statutes of limitation have been tolled by LG's knowing, active, and ongoing concealment and denial of the facts as alleged herein.

80.    LG was and is under a continuous duty to disclose to Plaintiff and the

Class the true character, quality and nature of the Ranges, particularly with respect to the serious risks to public safety presented by the Ranges.

81.    At all relevant times, and continuing to this day, LG knowingly, affirmatively and actively misrepresented and concealed the true character, quality, and nature of the Ranges and sold the Ranges into the stream of commerce as if they were safe for use.

82.    Given LG's failure to disclose this non-public information, over which LG had exclusive control, about the defective nature of the Ranges and attendant safety risks—and because Plaintiff and Class Members could not reasonably have known that the Ranges were thereby defective—Plaintiff and Class Members reasonably relied on LG's assurances of safety. Had Plaintiff and class members known that the Ranges pose a safety risk to the public, they would not have purchased the Ranges.

83.    Plaintiff and the Class have been kept ignorant by LG of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and the Class could not reasonably have discovered the true, latently defective nature of the Ranges.

**C.    Estoppel**

84.    LG was and is under a continuing duty to disclose to Plaintiff and the

Class the true character, quality, and nature of the Ranges. LG knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Ranges, and the concealment is ongoing. LG knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them. Plaintiff reasonably relied on LG's assurances of safety. For these reasons, LG is estopped from relying on any statute of limitations in defense of this action.

85.    Additionally, LG is estopped from raising any defense of laches due to its own conduct as alleged herein.

## CLASS ACTION ALLEGATIONS

86.    Plaintiff brings this action on her own behalf and on behalf of the following Classes and Subclasses pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

### Nationwide Class

All residents of the United States and its territories who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale.

### Florida Sub-Class

All residents of Florida who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale.

87.    The Class and the Subclass are referred to collectively as the "Class" for convenience. Excluded from the Class and Subclass are LG, its affiliates,

employees, officers, and directors; and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definitions above in response to discovery and/or further investigation.

88.     *Numerosity*.  Upon information and belief, the class is so numerous that joinder of all members is impracticable.  As of Q1 2019, LG accounted for 15.7% of the market share in the North American home appliances market.  The Class and Subclass therefore must contain, at the very least, hundreds of members each.

89.     *Commonality*.  The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Ranges' common design, whether the design is defective, whether the defective design poses a safety risk, LG's knowledge of the Defect, the uniform diminution in value of the Ranges, and the corresponding unjust enrichment to LG. The common questions of law and fact include, but are not limited to, the following:

a.     Whether the Ranges pose unreasonable safety risks to consumers;

b.     Whether LG knew or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c.     Whether LG concealed the safety risks its Ranges pose to consumers;

d.     Whether the safety risks the Ranges pose to consumers constitute

32

material facts that reasonable purchasers would have considered in deciding whether to purchase a range;

e.    Whether the Ranges possess material Defects;

f.    Whether LG knew or should have known of the inherent Defects in the Ranges when it placed them into the stream of commerce;

g.    Whether LG concealed the Defects from consumers;

h.    Whether the existence of the Defects are material facts reasonable purchasers would have considered in deciding whether to purchase a range;

i.    Whether the Ranges are merchantable;

j.    Whether the Ranges are fit for their intended use;

k.    Whether LG was unjustly enriched by the sale of defective Ranges to the Plaintiff class;

l.    whether any false warranties, misrepresentations, and material omissions by LG concerning its defective Ranges caused Class Members' injuries; and

m.    whether LG should be enjoined from further sales of the Ranges.

90.    ***Typicality***.  Plaintiff has the same interest as all members of the classes he seeks to represent, and all of Plaintiff's claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiff and all class members own or owned a Range designed or manufactured by LG with uniform Defects. All the claims of Plaintiff and Class Members arise out of LG's placement of a product into the marketplace it knew was defective and posed safety risks to

33

consumers, and from LG's failure to disclose the known safety risks and Defects. Also typical of Plaintiff's and Class members' claims is LG's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Ranges, LG's conduct in concealing the Defects in the Ranges, and Plaintiff's and Class members' purchase of the defective Ranges.

91.    *Adequacy*. Plaintiff will fairly and adequately represent and protect the interest of the Class Members: Plaintiff's interests align with those of the Class Members, and Plaintiff has no fundamental conflicts with the Class. Plaintiff has retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

92.    ***Predominance and Superiority***.  The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. LG has acted in a uniform manner with respect to the Plaintiff and Class Members.

93.    LG is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive.

34

Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for LG's wrongful conduct as alleged herein.

94. The concealed safety risks described above support swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

95. Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of LG's unlawful and wrongful conduct. Without a class action, Class Members will continue to suffer the undisclosed risks attendant to the Ranges and incur monetary damages, and LG's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

96. There will be no undue difficulty in the management of this litigation as a class action.

97. Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all class members and materially advance the litigation.

98. ***Ascertainability***.  The Class is defined by reference to objective

criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of certain Ranges, and class membership can be determined using receipts, photographs, ownership documentation, and records in LG's and other databases.

99.     ***Injunctive and Declaratory Relief***.  LG has acted and refused to act on grounds that apply generally to the Class, so injunctive and/or declaratory relief is appropriate with respect to the entire Class. LG made uniform representations and warranties to the Class as a whole, LG concealed facts from and made material misrepresentations to the Class as a whole, and LG has destroyed and may still be destroying evidence relevant to the allegations of the Class.

## CLAIMS FOR RELIEF

### Count I
### *Violation of the New Jersey Consumer Fraud Act*
### *N.J.S.A. 56:8-1, et seq.*
### **(On Behalf of the Nationwide Class)**

100.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

101.   Plaintiff brings this claim individually and on behalf of the Nationwide Classes.

102.   The New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq.*) ("NJCFA") states, in relevant part:

36

any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]

N.J.S.A. 56:8-2.

103.  Plaintiff and Class Members are consumers who purchased Ranges for personal, family, or household use.

104.  The advertisement, promotion, distribution, supply, or sale of the Ranges is a "sale or advertisement" of "merchandise" governed by the NJCFA.

105.  Before Plaintiff and Class Members' purchase of the Ranges, LG violated the NJCFA by making:

    a.    uniform representations that its Ranges were of a particular standard, quality, or grade when they were not and are not, and that they would perform as represented when they did not, as set forth above; and

    b.    false and/or misleading statements about the capacity and characteristics of the Ranges, as set forth above, that were unfair, deceptive, or otherwise fraudulent, had and continue to have the capacity to, and did, deceive the public and cause injury to Plaintiff and Class Members.

106.  LG, in its communications with and disclosures to Plaintiff and Class Members, intentionally concealed or otherwise failed to disclose that the Ranges included design Defects that pose a safety risk to consumers.

107.  Plaintiff and Class Members reasonably expected that the Ranges

37

would allow for safe cooking, and not present a safety hazard, both before and at the time of purchase, and reasonably expected that LG did not design the Ranges to incorporate material Defects known to LG, and that the Ranges would perform as represented by LG in its promotional materials, service manuals, and owner's manuals. These representations and affirmations of fact made by LG, and the facts it concealed or failed to disclose, are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely on in deciding whether to purchase a Range. Moreover, LG intended for consumers, including Plaintiff and Class Members, to rely on its assurances regarding the Ranges' purported safety.

108.   LG had exclusive knowledge that the Ranges had and have the Defects, which gave rise to a duty to disclose these facts. LG breached that duty by failing to disclose these material facts.

109.   The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances. There is a strong public interest in consumer appliance safety, as well as in truthfully advertising and disclosing consumer appliance defects that pose a risk to property and life.

110.   Had Plaintiff and Class Members known about the design Defects and

accompanying safety risks, and/or that the Ranges did not operate as advertised, they would not have purchased the Ranges or would have paid less than they did for them. As a direct and proximate result of LG's actions, Plaintiff and Class Members have suffered ascertainable loss and other damages.

111.   New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Nationwide Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

112.   New Jersey has a significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair. LG's headquarters and principal place of business are in Ridgefield Park, New Jersey. LG also owns property and conducts substantial business in New Jersey, and therefore New Jersey has an interest in regulating LG's conduct under New Jersey's laws. LG's decision to reside in New Jersey and avail itself of New Jersey's laws render the application of New Jersey law to the claims at hand constitutionally permissible.

113.   The application of New Jersey's laws to the proposed Nationwide Class members is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiff and the proposed

Nationwide Class members, and New Jersey has a greater interest in applying its laws here than any other interested State.

### Count II
### *Magnuson-Moss Warranty Act*
### (15 U.S.C. § 2301)
### (On behalf of the Nationwide Classes)

114.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

115.   Plaintiff brings this claim individually and on behalf of the Nationwide Class.

116.   Plaintiff and the Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

117.   LG is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

118.   The Ranges are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

119.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

120.   LG's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

121.   LG's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

122.   Defendants breached the implied warranty and the express warranty by virtue of the above-described acts.

123.   Plaintiff and the other Class Members notified LG of the breach within a reasonable time and/or were not required to do so. LG was also on notice of the Defect from, among other sources, the complaints and service requests it received from Class Members and its resellers.

124.   Defendants' breach of the implied warranty and express warranty deprived Plaintiff and Class Members of the benefits of their bargains.

125.   Plaintiff and the Class Members have had sufficient direct dealings with either LG or its agents (resellers and technical support) to establish privity of contract between LG, on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between LG and its resellers, and specifically, of LG's implied warranties. The distributors were not intended to be the ultimate consumers of the Ranges and have no rights under the warranty agreements provided with the Ranges; the warranty agreements were designed for and intended to benefit the consumer only.

41

126.   LG breached these warranties, as described in more detail above and below. Without limitation, the Ranges contain a Defect that puts Class Members safety in jeopardy. The Class Ranges share a common defect in that they are manufactured with defective materials and/or with poor workmanship. Contrary to LG's representations about its Ranges, the Ranges are defective in manufacture, materials and/or workmanship and are unsafe. The Ranges share a common defect that causes unintentional actuation. The resulting failures and manifestations of the defect are occurring within the warranty terms and period.

127.   Affording LG a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, LG has long been on notice of the claims of Plaintiff and Class members and has refused to provide a remedy, instead placing the blame on customers or refusing to acknowledge the existence of the defect.

128.   At the time of sale of each of the Ranges, LG knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Ranges' Defect and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure

42

and/or afford LG a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

129.   Plaintiff and Class Members would suffer economic hardship if they returned their Ranges but did not receive the return of all payments made by them. Because LG is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Ranges by retaining them.

130.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

131.   Plaintiff, individually and on behalf of all Class Members, seeks all damages permitted by law, in an amount to be proven at trial.

### Count III
### *Fraud By Omission*
### (On behalf of the Nationwide Class or, in the Alternative, the Florida Subclass)

132.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

133.   Plaintiff brings this claim individually and on behalf of the Nationwide Class or, in the alternative, the Florida Subclass.

43

134.   LG knew that the Ranges suffered from the Defect, were defectively designed and/or manufactured and were not suitable for their intended use.

135.   LG concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Ranges.

136.   LG was under a duty to Plaintiff and Class Members to disclose the defective nature of the Ranges because:

a.   LG were in a superior position to know the true state of facts about the safety defect contained in the Ranges;

b.   The omitted facts were material because they directly impact the safety of the Ranges;

c.   LG knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiff and Class Members;

d.   LG made partial disclosures about the quality of the Class Ranges without revealing their true defective nature; and

e.   LG actively concealed the defective nature of the Class Ranges from Plaintiff and Class Members.

137.   The facts concealed or not disclosed by LG to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase LG's Ranges or pay a lesser price for them. Whether a range can be safely owned and operated is a material safety concern. Had Plaintiff and Class Members known about the defective nature of the Ranges, they would not have purchased or would have paid less for them.

44

138. LG concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Ranges in order to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on LG's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase of LG's defective Ranges.

139. LG continued to conceal the defective nature of the Ranges even after Class Members began to report the problems. Indeed, LG continues to cover up and conceal the true nature of the problem today.

140. As a direct and proximate result of LG's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Ranges and obtain restitution (b) affirm their purchase or lease of the Ranges and recover damages.

141. LG's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich LG. LG's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## Count IV
### *Breach of Express Warranty*
**(On Behalf of the Nationwide Class or, in the Alternative,
the Florida Subclass)**

142.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

143.  Plaintiff brings this claim individually and on behalf of the Nationwide Class or, in the alternative, the Florida Subclass.

144.  LG's Warranty provides in relevant part that the Ranges are warranted by LG against defects in materials or workmanship for one year from the date of original retail purchase.

145.  Had Plaintiff and the Class known the Ranges were unsafe for use, they would not have purchased them.

146.  LG has breached its warranty and refused to provide appropriate warranty relief notwithstanding the risks of using the Ranges. Plaintiff and the Class reasonably expected, at the time of purchase, that the Ranges were safe for their ordinary and intended use.

147.  To the extent privity may be required, Plaintiff and the Class can establish privity with LG or alternatively, Plaintiff can establish that they fall into an exception to a privity requirement. Plaintiff and the Class relied on LG's warranties and dealt directly with LG through the exchange of warranty and recall information.

148.    Alternatively, Plaintiff and the Class were foreseeable third-party beneficiaries of LG's sale of the Ranges.

149.    Plaintiff is not required to give notice to LG, a remote manufacturer, and LG has had notice of the type and source of claims in this matter for years. As a direct and proximate result of LG's breach of its express warranty, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

150.    LG has refused to provide appropriate warranty relief notwithstanding the risks of using the Ranges. Plaintiff and the Class reasonably expected, at the time of purchase, that the Ranges were safe for their ordinary and intended use.

**Count V**
***Breach of the Implied Warranty of Merchantability***
**(On behalf of the Nationwide Class or, in the Alternative, the Florida Subclass)**

151.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

152.    Plaintiff brings this claim individually and on behalf of the Nationwide Class or, in the alternative, the Florida Subclass.

153.    By operation of law, LG as the manufacturer of the Ranges and as the provider of a limited warranty for the Ranges, impliedly warranted to Plaintiff and the Class that the Ranges were of merchantable quality and safe for their ordinary and intended use.

154.   Such implied warranty of merchantability, contained in U.C.C. § 2-314, has been codified in Florida. *See, e.g.*, Fla. Stat. Ann. §§ 672.314, et seq.

155.   LG breached the implied warranty of merchantability in connection with the sale and distribution of the Ranges. At the point of sale, the Ranges, while appearing normal, contained latent defects as set forth herein rendering them unsuitable and unsafe for personal use.

156.   LG breached the implied warranty of merchantability in connection with the sale and distribution of the Ranges. At the point of sale, the Ranges, while appearing normal, contained latent defects as set forth here rendering them unsuitable and unsafe for personal use.

157.   Had Plaintiff and the Class known the Ranges were unsafe for use, they would not have purchased or leased them.

158.   To the extent privity may be required, Plaintiff and the Class can establish privity with LG or alternatively, Plaintiff can establish that they fall into an exception to a privity requirement. Plaintiff and the Class relied on LG's warranties and dealt directly with LG through the exchange of warranty and recall information.

159.   Alternatively, Plaintiff and the Class were foreseeable third-party beneficiaries of LG's sale of the Ranges.

160.   Plaintiff is not required to give notice to LG, a remote manufacturer,

and LG has had notice of the type and source of claims in this matter for years.

161.   LG has refused to provide appropriate warranty relief notwithstanding the risks of using the Ranges. Plaintiff and the Class reasonably expected, at the time of purchase, that the Ranges were safe for their ordinary and intended use.

162.   As a direct and proximate result of LG's breach of the implied warranty of merchantability, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

**Count VI**
***Violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA),***
**Fla. Sta. § 501.201 *et seq.***
**(On behalf of the Florida Subclass)**

163.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

164.   Plaintiff brings this claim under the laws of Florida, individually, and on behalf of the Florida Subclass.

165.   Plaintiff and the Florida Subclass Members are "consumers" as defined by Fla. Stat. § 501.203(7).

166.   LG engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

167.   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

conduct of any trade or commerce." Fla. Stat. § 501.204(1).

168.   LG's acts and practices, described herein, are unfair in violation of Florida law for the reasons stated below.

169.   In the course of its business, LG concealed and suppressed material facts concerning the Ranges. LG failed to disclose the Defect. LG also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Ranges.

170.   LG thus violated the FDUTPA by, at a minimum, employing deception, deceptive acts or practices, fraud, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Ranges.

171.   LG intentionally and knowingly misrepresented material facts regarding the Ranges with intent to mislead Plaintiff and the Florida Subclass members into relying upon LG's omissions when deciding to purchase Ranges.

172.   LG owed Plaintiff and the Florida Subclass a duty to disclose the true nature of the Ranges because Defendant: (a) possessed exclusive knowledge about the Defect; (b) intentionally concealed the foregoing from Plaintiff and the Florida

Subclass; and (c) made incomplete representations about the Ranges, while purposefully withholding material facts from Plaintiff and the Florida Subclass that contradicted these representations.

173.   LG knew about the Defect at time of sale. LG acquired additional information concerning the Defect after the Ranges were sold but continued to conceal information.

174.   LG knew or should have known that its conduct violated the FDUTPA.

175.   LG's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff.

176.   By engaging in the above-described acts and practices, LG has committed one or more acts of unfair competition.

177.   LG's acts and practices have deceived and/or are likely to deceive members of the consuming public and the members of the Class.

178.   Plaintiff and the Florida Subclass suffered ascertainable loss and actual damages as a direct and proximate result of LG's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Florida Subclass members who purchased the Ranges would not have purchased them or would have paid significantly less if the Defect had been disclosed.

179.   LG had an ongoing duty to Plaintiff and Florida Subclass to refrain

from unfair and deceptive practices under the FDUTPA. All owners of the Ranges suffered ascertainable loss in the form of the diminished value of their Ranges as a result of LG's deceptive and unfair acts and practices made in the course of LGs business.

180.   Plaintiff and Florida Subclass members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and reasonable attorneys' fees under Fla. Stat. § 501.2105(1).

181.   Plaintiff and the Florida Subclass also seek an order enjoining LG's unfair and deceptive acts or practices pursuant to Fla. Stat. § 501.211, and any other just and proper relief available under the FDUTPA.

**Count VII**
***Unjust Enrichment (In the Alternative)***
**(On Behalf of the Nationwide Class or, in the Alternative,
the Florida Subclass)**

182.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

183.   Plaintiff brings this claim individually and on behalf of the Nationwide Class or, in the alternative, the Florida Subclass.

184.   Plaintiff and Class members conferred a tangible and material economic benefit upon LG by purchasing the defective Ranges.

185.   LG received proceeds from its intentional sale of defective Ranges with

defective control knobs, which were purchased by Plaintiff and Class Members for an amount far greater than the reasonable value of the defective Ranges.

186.   In exchange for the purchase price paid by Plaintiff and Class Members, LG provided defective Ranges that are likely to pose a material risk of fire or injury within their useful lives. This Defect renders the Ranges unfit, and indeed, unsafe for their intended use.

187.   Plaintiff and Class Members reasonably believed that the Ranges would function as advertised and warranted, and did not know, nor could have known, that the Ranges contained Defects at the time of purchase.

188.   LG received and is aware of the benefit conferred by Plaintiff and Class Members and has retained that benefit despite its knowledge that the benefit is unjust.

189.   Under the circumstances, permitting LG to retain the proceeds and profits from the sales of the defective Ranges would be unjust. Therefore, LG should be required to disgorge the unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pedro Brito, individually and on behalf of the above defined Class, by and through counsel, prays the Court grant the following relief:

A.      An Order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      An Order appointing Plaintiff Pedro Brito as representative for the Class and appointing her counsel as lead counsel for the Class;

C.      An order awarding Plaintiff Pedro Brito and all other Class Members damages in an amount to be determined at trial for the wrongful acts of LG;

D.      A Declaration that the Ranges are defective and pose a serious safety risk to consumers and the public;

E.      An Order enjoining LG, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective Ranges; requiring LG to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Ranges; and requiring LG to preserve all evidence relevant to this lawsuit and notify Range owners with whom it comes in contact of the pendency of this and related litigation;

F.      Nominal damages as authorized by law;

G.      Restitution as authorized by law;

H.      Punitive damages as authorized by law;

I.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

J.      An order awarding attorney's fees pursuant to applicable Federal and State law;

K.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

L.     Any and all other and further relief as this Court deems just, equitable, or proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all counts so triable.

Respectfully submitted,

Dated: December 20, 2022

*/s/ Zachary Arbitman*
Alan M. Feldman
Edward S. Goldis
Zachary Arbitman
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
afeldman@feldmanshepherd.com
egoldis@feldmanshepherd.com
zarbitman@feldmanshepherd.com

Michael F. Ram
Marie N. Appel
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
mram@forthepeople.com
mappel@forthepeople.com

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 20, 2022 a true and accurate copy of the foregoing has been electronically filed with the Clerk of this Court via this Court's CM/ECF System, which will send notice to all counsel of record registered with this Court's Electronic Case Filing System.

Dated: December 20, 2022               */s/ Zachary Arbitman*_____
                                       Zachary Arbitman