**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
(212) 918-3000 (p)
(212) 918-3100 (f)

*Attorneys for LG Electronics U.S.A., Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEDRO BRITO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS USA, INC. AND LG ELECTRONICS INC.,<br><br>Defendants. | No. 2:22-cv-05777-JMV-JSA |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LG ELECTRONICS U.S.A., INC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ...................................................1

SUMMARY OF ALLEGATIONS RELEVANT TO THIS MOTION ...................2

APPLICABLE LEGAL STANDARDS ..................................7

ARGUMENT ...................................................8

I.    PLAINTIFF LACKS STANDING TO PURSUE  CLAIMS FOR RANGES HE NEVER PURCHASED ...........................8

II.   FLORIDA LAW APPLIES TO THE COMMON LAW CLAIMS ..............11

III.  PLAINTIFF DOES NOT ADEQUATELY ALLEGE HIS FRAUD-BASED CLAIMS .............................................15

    A.    Plaintiff Does Not Allege An Actionable Misrepresentation. ...................................16

    B.    Plaintiff's Omission Theory Fails Because Plaintiff  Does Not Allege That LG Had a Duty to Make Any Disclosure, or Even Knowledge of the Claimed "Defect" .................18

    C.    The Consumer Protection Claims Fail for Several Reasons ...............................................23

        1.    Plaintiff Fails to Meet the Required Standard  for "Ascertainable Loss" Under the NJCFA ................23

        2.    Plaintiff Fails to Allege Actual Damages, as Required to Sustain an FDUPTA Claim .....................26

    D.    The Economic Loss Doctrine Bars the Fraud by Omission Claim ...........................................28

IV.   PLAINTIFF DOES NOT SUFFICIENTLY STATE A CLAIM  FOR BREACH OF EXPRESS OR IMPLIED WARRANTY .................28

A.     Plaintiff Fails to State an Express Warranty  Claim as the LG Materials and Workmanship  Warranty Does Not Extend to Design Defects. .................................................................28

B.     Plaintiff's Implied Warranty of Merchantability Claims Fail Because He Does Not Allege That His Range is Unmerchantable ..................................................................30

C.     Plaintiff's Warranty Claims Fail For Lack Of Pre-Suit Notice. ...............................................................................33

V.     PLAINTIFF'S MAGNUSON-MOSS WARRANTY ACT CLAIM FAILS TO MEET THE STATUTORY JURISDICTION REQUIREMENTS AND FAILS TO STATE A CLAIM ............................35

VI.     THE FAC DOES NOT STATE A  CLAIM FOR UNJUST ENRICHMENT ...............................................................................37

CONCLUSION ...........................................................................39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Wright*,
    468 U.S. 737 (1984)...................................................................................9

*Amara v. Publix Supermarkets, Inc.*,
    No. 8:22-CV-367-VMCJSS, 2022 WL 3357575 (M.D. Fla. Aug.
    15, 2022) ...............................................................................................36

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................7

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    No. 07-MD-01871, 2011 WL 4059952 (E.D. Pa. Sept. 7, 2011).....................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007)...................................................................................7

*Burdt v. Whirlpool Corporation*,
    No. C 15-01563 JSW, 2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) ..........31, 32

*Bus. Radio, Inc. v. Relm Wireless Corp.*,
    373 F. Supp. 2d 1317 (M.D. Fla. 2005), *aff'd*, 209 F. App'x 899
    (11th Cir. 2006)......................................................................................31

*Catalano v. MarineMax*,
    590 F. Supp. 3d 487 (E.D.N.Y. 2022) ........................................................30

*Century Indem. Co. v. Mine Safety Appliances Co.*,
    942 A.2d 95 (N.J. Sup. App. Div. 2008) .....................................................14

*Chapman v. Abbott Lab'ys*,
    930 F. Supp. 2d 1321 (M.D. Fla. 2013)..................................................13, 34

*Charter Oak Fire Ins. Co. v. JP & WJ, Inc.*,
    230 F. App'x 650 (9th Cir. 2007) ..............................................................32

*Chung v. Igloo Prod. Corp.*,
   No. 20-CV-4926 (MKB), 2022 WL 2657350 (E.D.N.Y. July 8,
   2022) ....................................................................................................30

*Cohen v. Subaru of Am., Inc.*,
   No. 1:20-cv-08442-JHR-AMD, 2022 WL 721307 (D.N.J. Mar. 10,
   2022) .........................................................................................14, 15, 25

*Curtiss-Wright Corp. v. Rodney Hunt Co.*,
   1 F. Supp. 3d 277 (D.N.J. 2014) .......................................................13

*David v. Volkswagen Grp. of Am., Inc.*,
   No. CV 17-11301-SDW-CLW, 2018 WL 1960447 (D.N.J. Apr.
   26, 2018) ...........................................................................................8, 9

*Davis v. Dell, Inc.*,
   No. CIV. 07-630 (RBK) (AMD), 2007 WL 4623030 (D.N.J. Dec.
   28, 2007) ..............................................................................................11

*Dennis v. Whirlpool Corp.*,
   No. 06-80784-CIV, 2007 WL 9701826 (S.D. Fla. Mar. 13, 2007)........31, 33, 35

*DFG Grp., LLC. V. Stern*,
   220 So. 3d 1236 (Fla. Dist. Ct. App. 2017) ......................................24

*Diaz v. FCA US LLC*,
   No. 21-CV-00906-EJW, 2022 WL 4016744 (D. Del. Sept. 2, 2022) ..........19, 20

*Dimartino v. BMW of N. Am., LLC*,
   No. 15-8447 (WJM), 2016 WL 4260788 (D.N.J. Aug. 11, 2016) ..............15, 16

*Durden v. Citicorp Tr. Bank, FSB*,
   No. 3:07-CV-974-J-33JRK, 2008 WL 2098040 (M.D. Fla. May 16,
   2008) ....................................................................................................15

*Eberhart v. LG Elecs. USA, Inc.*,
   No. CV 15-1761, 2015 WL 9581752 (D.N.J. Dec. 30, 2015)...........................26

*Emerson Radio Corp. v. Fok Hei Yu*,
   No. 2:20-cv-01618-WJM-MF, 2021 WL 1186824 (D.N.J. Mar. 30,
   2021) ....................................................................................................13

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
   1 So. 3d 400 (Fla. 3d DCA 2009) ...................................................................39

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   446 F. Supp. 3d 218 (E.D. Mich. 2020) ........................................................34

*Federal Insurance Company v. Lazzara Yachts of North America, Inc.*,
   No. 09-607, 2010 WL 1223126 (M.D. Fla. Mar. 25, 2010).......................34, 35

*Floyd v. Am. Honda Motor Co.*,
   966 F.3d 1027 (9th Cir. 2020) .......................................................................36

*Ford Motor Co. v. Hill*,
   404 So. 2d 1049 (Fla. 1981) ..........................................................................29

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ......................................................................8, 15

*Friedman v. Am. Guardian Warranty Servs.*,
   Inc., 837 So. 2d 1165 (Fla. Dist. Ct. App. 2003).............................................18

*Golden v. Zwickler*,
   394 U.S. 103 (1969).........................................................................................9

*Grandalski v. Quest Diagnostics Inc.*,
   767 F.3d 175 (3d Cir. 2014) ...........................................................................14

*Green v. Green Mt. Coffee Roasters, Inc.*,
   279 F.R.D. 275 (D.N.J. 2011)..........................................................................10

*Grisafi v. Sony Elecs. Inc.*,
   No. CV 18-8494, 2020 WL 7074725 (D.N.J. March 5, 2020)....................16, 21

*Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*,
   137 So. 3d 1081 (Fla. Dist. Ct. App. 2014) .....................................................13

*Guerrero v. Target Corp.*,
   889 F. Supp. 2d 1348 (S.D. Fla. 2012) ............................................................38

*Hale v. Stryker Orthopaedics*,
   No. 08-cv-3367, 2009 WL 321579 (D.N.J. Feb. 9, 2009)................................7, 8

*Hall v. Bristol-Myers Squibb Co.*,
No. CIV.A. 06-5203 (FLW), 2009 WL 5206144 (D.N.J. Dec. 30,
2009) ........................................................................................................... 17

*Hammer v. Vital Pharm., Inc.*,
2012 WL 1018842 (D.N.J. Mar. 26, 2012) ........................................................ 27

*HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*,
302 F. Supp. 3d 1319 (M.D. Fla. 2016) ............................................................ 26

*Hughes v. Panasonic Consumer Elecs. Co., a Div. of Panasonic Corp.
of N. Am.*,
No. CV 10-846 (SDW), 2012 WL 12905614 (D.N.J. Apr. 19,
2012) ........................................................................................................ 4, 25

*Jackmack v. Bos. Sci. Corp.*,
No. 2:20-CV-692-SPC-NPM, 2021 WL 1020981 (M.D. Fla. Mar.
17, 2021) ................................................................................................. 13, 34

*Jovine v. Abbott Lab'ys, Inc.*,
795 F. Supp. 2d 1331 (S.D. Fla. 2011) ................................................. 34, 35, 38

*Kaplan v. Volvo Penta of the Americas, LLC*,
No. 14-22226-CIV, 2014 WL 6908423 (S.D. Fla. Dec. 8, 2014) ...................... 13

*Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*,
313 U.S. 487 (1941) ...................................................................................... 12

*Koch v. Royan Wine Merchants, Ltd.*,
847 F. Supp. 2d 1370 (S.D. Fla. 2012) ............................................................ 15

*Koons v. Jetsmarter, Inc.*,
No. CV1816723MASDEA, 2019 WL 3082687 (D.N.J. July 15,
2019) ........................................................................................................... 11

*Koronthaly v. L'Oreal USA, Inc.*,
No. 07-CV-5588 (DMC), 2008 WL 2938045 (D.N.J. July 29,
2008), *aff'd*, 374 F. App'x 257 (3d Cir. 2010) ................................................... 9

*Koski v. Carrier Corp.*,
347 F. Supp. 3d 1185 (S.D. Fla. 2017) ............................................................ 38

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) .................................................................29

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) .............................................................28

*Licul v. Volkswagen Grp. of Am., Inc.*,
   No. 13-61686-CIV, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) .....................38

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
   865 F. Supp. 2d 529 (D.N.J. 2011) ....................................................................24

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).............................................................................................9

*Maniscalco v. Brother Int'l (USA) Corp.*,
   709 F.3d 202 (3d Cir. 2013) ..............................................................................12

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) .....................................................................37, 39

*McQueen v. BMW of N. Am.*,
   2014 WL 656619 (D.N.J. Feb. 20, 2014) .........................................................19

*MDVIP, Inc. v. Beber*,
   222 So. 3d 555 (Fla. Dist. Ct. App. 2017) ........................................................15

*Mehnert v. U.S. Bank Nat'l Ass'n*,
   *No. CV 17-4985 (JMV)*, 2018 WL 1942523 (D.N.J. Apr. 23, 2018) ...........17, 21

*Merkin v. Honda N. Am., Inc.*,
   No. 17-cv-03625 (PGS)(DEA), 2017 WL 5309623 (D.N.J. Nov.
   13, 2017) ............................................................................................................13

*Mladenov v. Wegmans Food Markets, Inc.*,
   124 F. Supp. 3d 360 (D.N.J. 2015).............................................................24, 25

*Oliver v. Funai Corp.*,
   Inc., No. 14-CV-04532, 2015 WL 9304541 (D.N.J. Dec. 21, 2015) ...........21, 22

*Orange Transportation Servs., Inc. v. Volvo Grp. N. Am.*,
   LLC, 450 F. Supp. 3d 311 (W.D.N.Y. 2020) .....................................................30

*Padilla v. Porsche Cars N. Am., Inc.*,
   391 F. Supp. 3d 1108 (S.D. Fla. 2019) ................................................................13

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*,
   L.P., No. 3:12-CV-1366-J-20JBT, 2013 WL 12172912 (M.D. Fla.
   Aug. 28, 2013) ......................................................................................................37

*Ponzio v. Mercedes-Benz USA, LLC*,
   447 F.Supp.3d 194 (D.N.J., 2020) ......................................................................37

*Rait v. Sears, Roebuck and Co.*,
   No. 08-2461, 2009 WL 2488155 (D.N.J. Aug. 11, 2009) ..............................22, 23

*Rose v. Ferrari N. Am., Inc.*,
   No. 21-CV-20772, 2022 WL 14558880 (D.N.J. Oct. 25, 2022) .........................18

*Rosenthal v. SharkNinja Operating LLC*,
   No. 16-1048, 2016 WL 5334662 (D.N.J. Sept. 22, 2016) ..................................24

*Salit Auto Sales, Inc. v. CCC Intelligent Sols. Inc.*,
   No. CV1918107JMVMF, 2021 WL 3783110 (D.N.J. Aug. 26,
   2021) ...............................................................................................................23, 24

*Schechter v. Hyundai Motor Am.*,
   No. 18-13634 (FLW), 2020 WL 1528038 (D.N.J. Mar. 31, 2020) ...............12, 14

*Schimmer v. Jaguar Cars, Inc.*,
   384 F.3d 402 (7th Cir. 2004) ...............................................................................35

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
   113 F.3d 405 (3d Cir. 1997) ................................................................................33

*Semeran v. Blackberry Corporation*,
   2:15-CV-00750-SDW-LDW, 2016 WL 406339 (D.N.J. Feb. 2,
   2016) ..................................................................................................................9, 10

*Simner v. LG Electronics U.S.A., Inc.*,
   No. 21-13322 (SDW)(CLW), 2022 WL 3152707 (D.N.J. Aug. 8,
   2022) .........................................................................................................10, 13, 14, 36

*Spera v. Samsung Elecs. Am., Inc.*,
   No. 2:12-CV-05412 (WJM) (MF), 2014 WL 1334256 (D.N.J. Apr.
   2, 2014) ................................................................................................................26

*Suriaga v. Gen. Elec. Co.*,
  No. CV 18-16288 (ES) (MAH), 2019 WL 6799613 (D.N.J. Dec.
  12, 2019) ........................................................................................................8

*Thiedemann v. Mercedes-Benz USA, LLC*,
  872 A.2d 783 (N.J. 2005) ...............................................................................24

*In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*,
  No. CIV 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11,
  2009) ........................................................................................................22, 26

*In re Toyota Motor Corp.*,
  No. 10-ml-2151, 2012 WL 12929769 (C.D. Cal. May 4, 2012) ......................34

*Troup v. Toyota Motor Corp.*,
  545 F. App'x 668 (9th Cir. 2013) ...............................................................29, 30

*Tull Bros. v. Peerless Prods., Inc.*,
  953 F. Supp. 2d 1245 (S.D. Ala. 2013) ...........................................................29

*Waldron v. Jos. A. Bank Clothiers, Inc.*,
  No. 12-cv-02060 (DMC) (JAD), 2013 WL 12131719 (D.N.J. Jan.
  28, 2013) ........................................................................................................25

*Weske v. Samsung Elecs. Am., Inc.*,
  No. CIV. 2:10-4811 WJM, 2012 WL 833003, at *5 (D.N.J. Mar.
  12, 2012) ....................................................................................................12, 22

*Wesley v. Samsung Elecs. Am., Inc. ("Wesley I")*,
  No. 20-CV-18629, 2021 WL 5771738 (D.N.J. Dec. 3, 2021) ...................*passim*

*Wesley v. Samsung Elecs. Am., Inc. ("Wesley II")*,
  No. CV 20-18629, 2022 WL 16509541 (D.N.J. Oct. 28, 2022) .......................29

*White v. Samsung Elecs. Am., Inc.*,
  No. 17-1775, 2019 WL 8886485 (D.N.J. Aug. 21, 2019)...........................26, 27

*Wyse v. Gerard Roof Prod., LLC*,
  No. 3:19CV121-TKW-EMT, 2019 WL 7347179 (N.D. Fla. Nov.
  12, 2019) ....................................................................................................31, 37

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
  510 F. Supp. 3d 1141 (S.D. Fla. 2020) ...........................................................36

**Statutes**

15 U.S.C. § 2310(d) ..............................................................................35

28 U.S.C. § 1332 ..................................................................................36

Fla. Stat. § 95.11 ..................................................................................13

Fla. Stat. § 672.607(3)(a) .....................................................................34

N.J. Stat. Ann. § 2A:14-1 .....................................................................13

N.J. Stat. Ann. § 12A:2–725(1) ............................................................13

**Rules**

Fed. R. Civ. P. 9(b) .........................................................................*passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................7

## INTRODUCTION

Plaintiff Pedro Brito ("Plaintiff") brings this putative nationwide class action seeking damages in connection with his purchase of an LG Electronics U.S.A., Inc. ("LG" or, together with "Plaintiff," the "Parties") electric range with front-mounted burner knobs, model number LSEL6335F (the "Range"). According to Plaintiff, the design of these burner knobs is defective because they are purportedly susceptible to being inadvertently actuated. Plaintiff does not allege that he is unable to use his Range, that it does not cook safely when he is cooking, or that he has had to modify his behavior in light of the alleged "defect." In fact, the opposite appears to be true as Plaintiff states that he continues to use his Range. Nevertheless, he seeks to represent a nationwide class, claiming recovery as to potentially thousands of ranges over an undefined period of time, because he (and the putative class) allegedly "were deceived and deprived of the benefit of their bargain" due to LG's purported misrepresentations and omissions regarding the alleged defect. Not true.

Plaintiff commenced this action on September 29, 2022. *See* ECF No. 1. On November 14, 2022, LG moved to dismiss Plaintiff's original complaint. *See* ECF No. 7-1.[1] In sum LG argued, *inter alia,* that Plaintiff:

> lacks standing to bring claims relating to product models he did not purchase. Moreover, while he asserts claims based in fraud and quasi-

---

[1] LG has moved to compel arbitration, *see* ECF No. 6, and maintains that all claims should be dismissed or, in the alternative, stayed, pending resolution of any arbitration.

> contract, he relies almost entirely on generalized, vague and conclusory allegations that the LG ranges are "defective." Plaintiff's allegations offer no relevant particularity, offer no support for his claims, and suffer from numerous additional substantive and procedural defects.

ECF No. 7-1 at 1-2. Rather than grapple with the deficiencies identified in LG's motion, Plaintiff filed an Amended Class Action Complaint (the "FAC"). *See* ECF No. 17. In the FAC, Plaintiff added a new (jurisdictionally defective) cause of action for violation of the federal Magnuson-Moss Warranty Act ("MMWA"), and new "allegations" regarding LG's purported knowledge of the claimed defect, including pointing to various online posts and reviews purportedly (but not actually) supporting his theory here. Rather than correct the shortcomings of the original complaint, the FAC fails to identify any actionable LG misrepresentations or omissions. The FAC should be dismissed, with prejudice.

## SUMMARY OF ALLEGATIONS RELEVANT TO THIS MOTION

Plaintiff, a Florida resident, alleges that he purchased his LG Range from a Best Buy store in Miami, Florida. FAC ¶¶ 12, 19. His theory is that the Range includes "dangerous latent defects in the design . . . of [its] front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation" (the "Claimed Defect") *Id.* ¶ 1. According to Plaintiff, the Claimed Defect is caused by two purported design flaws: (1) "the low detent (catch that prevents motion until released) force and tiny distance the burner control knobs need to travel to be turned to the 'on' position," and (2) the placement of the control knobs on the ranges

"without the necessary guards to prevent such unintentional actuation." *Id.* ¶¶ 3-4, 41. Despite clear instructions in the Owner's Manual about the Control Lock feature, Plaintiff alleges "[t]he design of the Ranges puts no space between the consumer and the hazard. There are no guards that reduce the risk of unintentional actuation during cleaning or other inadvertent contact made by a user, bystander, child, or pet." *Id.* ¶ 42. Plaintiff also claims that – prior to making his purchase — he "reviewed" certain, unidentified and unspecified "LG marketing materials." *Id.* ¶ 20. Nowhere, however, does he allege *when and where specifically* he reviewed these materials, *who* produced these materials, *what* these materials said, *why* he reviewed these materials, or anything else with respect to his purported review of any LG "marketing materials."

Plaintiff alleges, with no particularity, that "shortly" after receiving his Range "on or around November 6, 2021," he "began noticing that his Range would turn on inadvertently and without warning." *Id.* ¶ 25. And he identifies one instance, on August 5, 2022, where he claims his "Range actuated without his knowledge." *Id.* ¶ 26. Nowhere else in the FAC does Plaintiff allege any other instance of his Range actuating inadvertently. Moreover, nowhere does Plaintiff allege any effect that the Claimed Defect had on his ability to use the Range for cooking. Indeed, the opposite appears to be true as he concedes that he: "<u>uses, and at all times has used</u>, his Range <u>in a normal and expected manner</u>." *Id.* ¶ 24 (emphasis added).

Plaintiff alleges that "[t]he salesperson at Best Buy informed him that the Range was covered by a one-year warranty," *id.* ¶ 21,[2] and that an LG Warranty "was included in the user manual" for the Range Plaintiff purchased. *Id.* ¶¶ 22, 68.[3] But he says nothing else. Plaintiff also alleges that, at some point after the August 5, 2022 incident, he "contacted Best Buy about his Range and the Defect," *id.* ¶ 27, and that a Best Buy representative "re-directed [him] to LG" who, informed Plaintiff that they would "send someone out to investigate." *Id.* Despite previously alleging the complete opposite,[4] Plaintiff now acknowledges that, "[i]n or around August or September, 2022, a service technician made two visits to Mr. Brito's home to address

---

[2] The applicable warranty (the "LG Warranty") is attached, *see* Declaration of Phoebe A. Wilkinson ("Wilkinson Decl."), Exhibit A. It is in the Owner's Manual. The Court may take judicial notice of the Owner's Manual and LG Warranty because "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Hughes v. Panasonic Consumer Elecs. Co., a Div. of Panasonic Corp. of N. Am.*, No. CV 10-846 (SDW), 2012 WL 12905614, at *3 (D.N.J. Apr. 19, 2012).

[3] The Range's manual explains the Range's "control lock," through which one can "disable[] most control panel buttons and *the cooktop control knobs*." Wilkinson Decl. Ex. A at 67 (emphasis added). The control lock is described in three different places. *Id.* at 22-23, 29 and 67. Nowhere does Plaintiff allege that the control lock feature did not work properly, or that he even attempted to use it.

[4] In the first Complaint, Plaintiff represented to the Court that "no investigator ever contacted Mr. Brito or came to his house." ECF No. 1 at ¶ 25. Having reviewed LG's first motion to dismiss, which noted that "LG's records indicate that they did contact Mr. Brito, inspected his Range in August 2022, and he refused further service," ECF No. 7-1 at  5 n.3, Plaintiff now admits that LG sent an investigator to his home.

4

the Defect in his Range." *Id.* ¶ 28.[5] According to Plaintiff, during the first visit, the unidentified technician inspected Plaintiff's Range and "placed an order for parts that were supposed to address the Defect." *Id.* ¶ 29. On the second visit, Plaintiff claims the technician installed a "replacement glass top for his Range." *Id.* ¶ 30. Plaintiff claims he "asked why the service technician did not bring a replacement part to fix the Defect, such as replacement knobs that were not susceptible to unintentional actuation," and that the technician purportedly "informed Mr. Brito that the Defect was a known issue at LG; however, LG did not have any fixes for the Defect," and "advised Mr. Brito to remove the Range knobs when the appliance was not in use." *Id.*

Plaintiff alleges two further interactions with LG: one, on September 22, 2022, where an unspecified "LG representative called Mr. Brito and asked if he had incurred damage from the fire that occurred on August 5, 2022," to which Plaintiff "advised that he was represented by counsel and would not answer any questions." *Id.* ¶ 31. The second, on September 26, 2022, where "an LG representative emailed Mr. Brito advising him that his inquiry would be closed because LG did not receive the documents and/or proof of purchase that it requested." *Id.* ¶ 32.

---

[5] Plaintiff provides no information about the technician – such as whether he was an employee of LG, Best Buy or another service provider.

Next Plaintiff summarily alleges that "[a]t all relevant times, LG knew that the Ranges it marketed and sold were prone to unintentional actuation, and, therefore, that the Ranges were inherently defective . . . ." *Id.* ¶ 46. According to Plaintiff, this knowledge was based on a handful of "incident reports about the Defect" made "to the U.S. Consumer Product Safety Commission," ("CPSC"), *id.* ¶¶ 47-55, as well as "complaints" and an Ask & Answer section posted on LG's website, *id.* ¶¶ 56-66, and the observations of "certified LG appliance technicians." *Id.* ¶ 67. Critically, none of Plaintiff's purported CPSC "incident reports," "complaints," or the "Ask & Answer" concerns the Range itself, as opposed to other LG models.  Likewise, not only do *none* of these purported complaints reference the Claimed Defect directly, many explicitly concern purported issues *other* than the Claimed Defect. *See, e.g.*, *id.* ¶¶ 48, 53, 62 (attributing unintentional actuation to "large" burner knobs); *id.* ¶ 49 (attributing the same to the size of the burner knobs and the "angle" of the range's "front plate"); *id.* ¶ 59 (complaining about the location of the knobs on the range). Like Plaintiff, many of these postings state that the owners continue to use their range. *See, e.g.*, *id.* ¶ 48 ("[t]he consumer indicates that she uses her unit on average once every day."); *id.* ¶ 62 ("The oven and stove top work great. The only complaint I have are the knobs are too large.").

Despite the conclusory and vague nature of Plaintiff's description of the alleged issues concerning his Range, and the fact that he purchased only one LG

6

range model, he purports to bring claims for other LG ranges "containing *substantially similar*" controls, FAC ¶ 35 (emphasis added), that allegedly suffer from the same Claimed Defect. That is improper. *See infra* 8-11. Plaintiff also purports to represent two broad putative classes. FAC ¶ 86. A Nationwide Class defined to include "[a]ll residents of the United States and its territories who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale," and a Florida Subclass, defined the same but for Florida residents only. *Id*. Plaintiff asserts seven claims for relief. Each suffers from pleading deficiencies and should be dismissed pursuant to FRCP 12(b)(6) and 9(b), with prejudice.

## <u>APPLICABLE LEGAL STANDARDS</u>

The relevant pleading standards are well-settled and familiar to this Court. Under FRCP 12(b)(6), claims must be dismissed when they are not plausible on their face. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007). Although a Court must accept as true all well-pleaded factual allegations, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *See Ashcroft*, 556 U.S. at 678. Likewise, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. If the factual allegations are not "sufficient to raise a plaintiff's right to relief above a

speculative level," the claim should be dismissed. *Hale v. Stryker Orthopaedics*, No. 08-cv-3367, 2009 WL 321579, at *2 (D.N.J. Feb. 9, 2009).

For claims based in fraud, the allegations must satisfy the more "stringent pleading requirements" of Rule 9(b) by "stat[ing] with particularity the circumstances of the alleged fraud." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); Fed. R. Civ. P. 9(b). A plaintiff must allege with particularity the "who, what, when, where, and how" of the fraud or misrepresentation. *Wesley v. Samsung Elecs. Am., Inc. ("Wesley I")*, No. 20-CV-18629, 2021 WL 5771738, at *2 (D.N.J. Dec. 3, 2021) (internal quotation omitted). Specifically, plaintiffs alleging fraud "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. While "knowledge and intent are exempt from Rule 9(b)'s particularity requirement, conclusory allegations of knowledge cannot survive a motion to dismiss." *Suriaga v. Gen. Elec. Co.*, No. CV 18-16288 (ES) (MAH), 2019 WL 6799613, at *6 (D.N.J. Dec. 12, 2019) (internal quotation and citation omitted).  Plaintiff's claims fail to meet these standards.

## ARGUMENT

### I.   PLAINTIFF LACKS STANDING TO PURSUE CLAIMS FOR RANGES HE NEVER PURCHASED

Plaintiff lacks standing to pursue claims for ranges he did not purchase or own. A plaintiff must "have 'standing' to invoke the power of a federal court . . . ."

*David v. Volkswagen Grp. of Am., Inc.*, No. CV 17-11301-SDW-CLW, 2018 WL 1960447, at *3 (D.N.J. Apr. 26, 2018) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "Pursuant to Article III of the United States Constitution, the court may exercise jurisdiction only where there is an actual case or controversy." *Semeran v. Blackberry Corporation*, 2:15-CV-00750-SDW-LDW, 2016 WL 406339, at *3 (D.N.J. Feb. 2, 2016) (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)).

To satisfy the Article III standing requirement, a plaintiff must establish that: (1) he has "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) there is "a causal connection between the injury and the conduct complained of . . . ;" and (3) the injury must be able to "be redressed by a favorable decision." *David*, 2018 WL 1960447, at *3 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This threshold "inquiry does not change in the context of a putative class action." *Semeran*, 2016 WL 406339, at *3 (quoting *Koronthaly v. L'Oreal USA, Inc.*, No. 07-CV-5588 (DMC), 2008 WL 2938045, at *4 (D.N.J. July 29, 2008), *aff'd*, 374 F. App'x 257 (3d Cir. 2010)).

"In the context of putative class actions arising out of products liability actions, this Court has previously held that a plaintiff has standing only for claims related to products he purchased or used." *David*, 2018 WL 1960447, at *3. In *David*, although the plaintiff had brought claims based on a number of Volkswagen models,

the court considered only claims relating to the single model he had purchased, a 2014 Volkswagen Touareg, and dismissed the claims related to the other Volkswagen models and model years for lack of standing. *Id.* In similar instances, courts have dismissed class claims relating to models of products other than the model purchased by the named plaintiffs. *See, e.g.*, *Semeran*, 2016 WL 406339, at *3 (dismissing class claims relating to six Blackberry models other than the particular model purchased by plaintiff); *Green v. Green Mt. Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011) (dismissing class claims relating to twelve Keurig models other than the particular model purchased by plaintiff); *Simner v. LG Electronics U.S.A., Inc.*, No. 21-13322 (SDW)(CLW), 2022 WL 3152707, at *5 (D.N.J. Aug. 8, 2022) (dismissing claims relating to four dishwasher models other than the particular models purchased by plaintiffs).

This Court should do the same here since Plaintiff admits that he purchased only one model (LSEL6335F), but brings class claims with respect to "all other models (regardless of whether discontinued or still available for sale) containing *substantially similar* front-mounted burner controls." *See* FAC ¶ 35 (emphasis added). "Substantially similar" is not enough and, even if it were, Plaintiff acknowledges that he seeks to represent purchasers of ranges which are designed differently than his own. *See id.* ¶ 43 (alleging that some Ranges "may contain an oven handle that could have a guarding effect"); *see also Simner*, 2022 WL 3152707,

10

at *4 (plaintiff lacked standing with respect to dishwashers he did not purchase where "the issues may be similar in some facets, but not demonstrably the same").

Accordingly, the Court should find that Plaintiff does not have standing to assert claims on behalf of the owners of other range models, and all claims relating to other models should be dismissed for lack of standing.

## II.   FLORIDA LAW APPLIES TO THE COMMON LAW CLAIMS

Plaintiff – a Florida resident – alleges four common law claims. *See* FAC ¶¶ 132-62, 182-89. These claims "arise out of" the LG Warranty, and therefore are subject to the LG Warranty's choice of law provision, which provides that "[t]he law of the state of [Plaintiff's] residence shall govern . . . ." Wilkinson Decl. Ex. A at 77-78. "Under New Jersey law, a choice of law provision will be honored unless: (1) [t]he state chosen has no substantial relationship to the parties or the transaction"; or (2) "application of the law chosen would conflict with a fundamental public policy of a state having a greater interest in a determination of a particular issue." *Davis*, 2007 WL 4623030, at *6 (internal quotation omitted). "Typically, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Koons v. Jetsmarter, Inc*., No. CV1816723MASDEA, 2019 WL 3082687, at *4 (D.N.J. July 15, 2019) (internal quotation omitted). Here, neither prong

prevents application of the LG Warranty's choice of law provision, *see* ECF No. 26 at 7-8, and the Court should apply Florida law to Plaintiff's common law claims.

Even under a traditional choice of law analysis, the same conclusion is reached. *See Schechter v. Hyundai Motor Am.*, No. 18-13634 (FLW), 2020 WL 1528038, at *4 (D.N.J. Mar. 31, 2020) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496 (1941)). Under New Jersey law, this Court first determines "whether an actual conflict exists" between the laws of the relevant states. *Id.* (internal citation omitted). If no conflict exists, the forum law applies. *Weske v. Samsung Elecs. Am., Inc.*, No. CIV. 2:10-4811 WJM, 2012 WL 833003, at *2 (D.N.J. Mar. 12, 2012). If a conflict exists, the law of the state with the "most significant relationship" to the claim applies, as determined by the Restatement (Second) Conflict of Laws factors. *Schechter*, 2020 WL 1528038, at *4 (citing *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 207 (3d Cir. 2013)).[6]

Here, there are two potentially applicable state's laws: Florida – where Plaintiff lives, allegedly reviewed LG's advertising, and purchased and used his LG Range; and, New Jersey – the forum state and location of LG's headquarters. Under

---

[6] The relevant Restatement factors are: (a) "where plaintiff acted in reliance upon the representations," (b) "where plaintiff received the representations," (c) "where defendant made the representations," (d) "domicile, residence, nationality, place of incorporation and place of business of the parties," (e) location of product when purchased, and (f) plaintiff's location when he made the purchase. *Schechter*, 2020 WL 1528038, at *5 (citation omitted).

the first prong of the "most significant relationship" test, Florida law conflicts with

New Jersey on all of Plaintiff's state common law claims:

- Florida and New Jersey conflict as to common law fraud claims (here Plaintiff's fraud by omission cause of action). For example, the statute of limitations are different. *Compare* Fla. Stat. § 95.11(3) (four year statute of limitations for actions founded on fraud, negligence, statutory liability, and legal or equitable action on a contract), *with* N.J. Stat. Ann. § 2A:14-1 (six years); *see also Curtiss-Wright Corp. v. Rodney Hunt Co.*, 1 F. Supp. 3d 277, 284 (D.N.J. 2014) (differing statute of limitations periods for common law fraud constitute conflict).

- Conflicts also exist between Florida and New Jersey as to Plaintiff's warranty claims. *Compare Jackmack v. Bos. Sci. Corp.,* No. 2:20-CV-692-SPC-NPM, 2021 WL 1020981, at *3 (M.D. Fla. Mar. 17, 2021 (pre-suit notice for express warranty claim required in Florida), *and Chapman v. Abbott Lab'ys*, 930 F. Supp. 2d 1321, 1325 (M.D. Fla. 2013) (same with implied warranty claim), *with Merkin v. Honda N. Am., Inc.*, No. 17-cv-03625 (PGS)(DEA), 2017 WL 5309623, at *4 (D.N.J. Nov. 13, 2017) (pre-suit notice not required for remote seller in New Jersey), *and Jackmack*, 2021 WL 1020981, at *2 (Florida requires privity for breach of express warranty claim); *compare Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1117 (S.D. Fla. 2019) (same with respect to implied warranty), *with Simner*, 2022 WL 3152707, at *5 (New Jersey does not); *compare Kaplan v. Volvo Penta of the Americas, LLC*, No. 14-22226-CIV, 2014 WL 6908423, at *2 (S.D. Fla. Dec. 8, 2014) ("Florida provides a five-year statute of limitations for breach of express warranty claims.") (citing Fla. Stat. § 95.11(2)(b)), *with* N.J. Stat. Ann. § 12A:2–725(1) (four year statute of limitations for actions for breach of contract).

- The laws of Florida and New Jersey conflict as to unjust enrichment as each state provides a different statute of limitations. *Compare Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1094 (Fla. Dist. Ct. App. 2014) ("The limitations period for an unjust enrichment action is four years"); § 95.11(3)(p), Fla. Stat. (allowing four years to bring "[a]ny action not specifically provided for in these statutes"), *with* N.J. Stat. Ann. § 2A:14-1 (six years); *see also Emerson Radio Corp. v. Fok Hei Yu*, No. 2:20-cv-01618-WJM-MF, 2021 WL 1186824, at *3 (D.N.J. Mar. 30, 2021) (differing statute of limitations periods for unjust enrichment constitute conflict).

Because conflicts exist, the next step is to determine the state with the "most significant relationship." For Plaintiff's fraud-based claims, a Court weighs the factors found in Restatement § 148. *Schechter*, 2020 WL 1528038, at *5 (citing *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 180 (3d Cir. 2014)). Applied here, the factors weigh in favor of applying the law of Plaintiff's home state: Plaintiff allegedly reviewed LG's advertising statements, purchased and used his range in Florida. *See, e.g., Cohen v. Subaru of Am., Inc.,* No. 1:20-cv-08442-JHR-AMD, 2022 WL 721307, at *16 (D.N.J. Mar. 10, 2022) ("For most Plaintiffs – those who purchased their vehicles in the state where they reside – the § 148(2) factors weigh in favor of applying the law of Plaintiffs' home states."). Based on Plaintiff's allegations, Florida is the state with the "most significant relationship" to Plaintiff's fraud based claims.

For Plaintiff's contract-based claims the Court weighs the factors found in Restatement § 188. *See Century Indem. Co. v. Mine Safety Appliances Co.*, 398 N.J. Super. 422, 436 (App. Div. 2008).  Those factors weigh in favor of applying Florida law for the same reasons. Therefore, all of Plaintiff's common law claims are governed by Florida law. *Accord Simner*, *2022 WL 3152707 at *5-6* (applying the law of the plaintiffs' home state to claims for breach of express warranty, breach of implied warranty, common law fraud, and unjust enrichment).

### III.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE HIS FRAUD-BASED CLAIMS

Plaintiff alleges three fraud-based causes of action: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), (2) fraud by omission, and (3) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). None is adequately pled, or stated with the requisite particularity – as is required. *See Frederico*, 507 F.3d at 200–01 (a NJCFA claim is subject to Rule 9(b)'s pleading requirements); *Durden v. Citicorp Tr. Bank, FSB*, No. 3:07-CV-974-J-33JRK, 2008 WL 2098040, at *6 (M.D. Fla. May 16, 2008) (claims based on fraudulent omissions must be pled with particularity under Rule 9(b)); *Dimartino v. BMW of N. Am., LLC*, No. 15-8447 (WJM), 2016 WL 4260788, at *6 (D.N.J. Aug. 11, 2016) ("When FDUTPA claims 'sound in fraud,' courts are inclined to apply Rule 9(b).") (citing *Koch v. Royan Wine Merchants*, Ltd., 847 F. Supp. 2d 1370, 1380-81 (S.D. Fla. 2012)).

Plaintiff's fraud-based claims are predicated on two theories: (1) a misrepresentation theory, alleging nothing more than that LG made certain uniform representations that its Ranges were "of a particular standard, quality, or grade when they were not and are not,"[7] and "false and/or misleading statements about the

---

[7] Indeed, such statements are nothing more than what is routinely found to be non-actionable sales puffery. *See, e.g., MDVIP, Inc. v. Beber*, 222 So. 3d 555 (Fla. Dist. Ct. App. 2017); *Cohen*, 2022 WL 721307, at * 18 & n.26 (finding defendant's "nebulous claim that its vehicles are 'safe' or 'reliable'" to be unactionable puffery).

capacity and characteristics of the Ranges" FAC ¶ 105; as well as (2) an omission theory, alleging that LG intentionally concealed or otherwise failed to disclose the Claimed Defect. *Id.* ¶¶ 106, 134-39, 169. Neither has merit: Plaintiff fails to allege particularities sufficient to allege an actionable affirmative misrepresentation, or the requisite information to pursue a theory based on a knowing omission.

## A.   Plaintiff Does Not Allege An Actionable Misrepresentation.

Plaintiff's statutory consumer-fraud claims fail to get beyond the starting gate as the FAC does not allege a single actionable misrepresentation. While Plaintiff makes vague references to representations in "promotional materials, service manuals, and owner's manuals" that he allegedly saw before he purchased his Range, FAC ¶¶ 20, 107, he fails to say *who* asserted them (given that he made his purchase in a retail store), *what* they said, *why* they were false, *when* he saw/heard them, or *whether* he relied upon them. Such threadbare allegations fall far short of Rule 9(b)'s pleading requirements. *See, e.g.*, *Grisafi v. Sony Elecs. Inc*., No. CV 18-8494, 2020 WL 7074725, at *3 (D.N.J. March 5, 2020) (Vazquez, J.) (allegations that plaintiff "read 'articles [ ] on the internet which touted that the Dash could be used as a photo frame, internet radio, Facebook feed, watch Netflix, Hulu, YouTube, and check the weather among many other features'" did not state a claim for violation of the NJCFA); *Dimartino*, 2016 WL 4260788, at *7 (dismissing FDUTPA claims based on affirmative misrepresentations for failure to include particularities).

Plaintiff's failure to allege a single LG *representation* (let alone a *misrepresentation*, and a far cry from the required *actionable misrepresentation*) brings his claims far below the required threshold. They should be dismissed accordingly.

Indeed, because Plaintiff alleges no specifics as to "*who* made the alleged misrepresentations" (for example, it is not clear that the "marketing materials" that Plaintiff reviewed were created, or even authorized by LG), "*what* those statements were, or in fact *when* they were made," dismissal is warranted. *See, e.g.*, *id.* (dismissing FDUTPA claims based on affirmative misrepresentations) (emphasis added); *see also, e.g.*, *Mehnert v. U.S. Bank Nat'l Ass'n, No. CV 17-4985 (JMV)*, 2018 WL 1942523, at *8 (D.N.J. Apr. 23, 2018) (Vazquez, J.) (dismissing NJCFA claims where "[t]he Complaint fails to set forth the required who, what, when, where, and how of the alleged impropriety"); *see also Hall v. Bristol-Myers Squibb Co.*, No. CIV.A. 06-5203 (FLW), 2009 WL 5206144, at *9 (D.N.J. Dec. 30, 2009) (dismissing FDUTPA claims where "Plaintiffs fail to identify any specific advertisements Plaintiff Hall and Decedent viewed, how they were misled by these advertisements, how these advertisements affected their prescriptions for Plavix and how these advertisements caused any of their injuries"); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-MD-01871, 2011 WL 4059952, at *1 (E.D. Pa. Sept. 7, 2011) (dismissing FDUTPA claim where "the complaint fails to identify any

specific advertisements or other materials that Plaintiff viewed"). The same result is warranted here.

> **B.**   **Plaintiff's Omission Theory Fails Because Plaintiff Does Not Allege That LG Had a Duty to Make Any Disclosure, or Even Knowledge of the Claimed "Defect"**

In order for Plaintiff to proceed with omission-based claims, he must first sufficiently allege that LG was under a duty to disclose the Claimed Defect. *See, e.g.*, *Rose v. Ferrari N. Am., Inc.*, No. 21-CV-20772, 2022 WL 14558880, at *6 (D.N.J. Oct. 25, 2022) ("[i]mplicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase.") (internal quotation omitted) (Vazquez, J.); *Friedman v. Am. Guardian Warranty Servs.*, Inc., 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003) ("Fraud based upon a failure to disclose material information exists only when a duty to make such disclosure exists."). Pertinent here, certain state laws, including specifically New Jersey and Florida, "recognize a duty to disclose where the defendant possesses exclusive or superior knowledge or actively conceals the omitted information." *Wesley I*, 2021 WL 5771738, at *3 (citation omitted). Here, no scenario giving rise to a duty to disclose exists, as Plaintiffs do not allege superior knowledge or concealment of a material fact. *See Wesley I*, 2021 WL 5771738, at *3 (dismissing fraud by omission claim because "Plaintiffs fail to establish that Samsung had superior knowledge about the alleged defect").

First, the allegations in the FAC do not establish LG's knowledge of the Claimed Defect with respect to the Range.  As explained above, none of Plaintiff's purported CPSC "incident reports," "complaints," and the "Ask & Answer" concerns the Range itself, as opposed to other LG models the Plaintiff did not purchase (which is significant since Plaintiff himself acknowledges that the models are not identical, and only "substantially similar"). *See supra* 6-7. Likewise, not only do *none* of these purported complaints reference the Claimed Defect explicitly, many refer to other purported problems which caused unintentional actuation. *See supra* 6. This undermines Plaintiff's position: "[w]here courts have viewed consumer complaints as sufficient to establish pre-sale knowledge, the complaints *must identify or describe the defect alleged, not merely identify some symptoms*," *Diaz v. FCA US LLC*, No. 21-CV-00906-EJW, 2022 WL 4016744, at *30 (D. Del. Sept. 2, 2022) (applying, *inter alia*, Florida law) (emphasis added). There is no basis to conclude that online postings about *other* issues with *other* ranges could put LG on notice with respect to the Claimed Defect of the Range. *Wesley I*, 2021 WL 5771738, at *3 (allegations of customer complaint regarding "problems on multiple models" were not sufficient to infer defendant's knowledge of a defect in plaintiff's model); *see also McQueen v. BMW of N. Am.*, 2014 WL 656619 at *4 (D.N.J. Feb. 20, 2014) (finding insufficient allegations that defendant received "less than ten complaints" about "failures" in similar model vehicles).

This insufficiency is further compounded by the date of several of the postings, *see id.* ¶ 51, 57-58, 61, 64 – having been posted *after* Plaintiff purchased his Range "[o]n or about November 6, 2021." *Id.*   ¶ 18. These postings provide no support with respect to Plaintiff's allegation of LG's pre-purchase knowledge. *Accord Wesley I*, 2021 WL 5771738, at *3; *Diaz*, 2022 WL 4016744, at *29 (finding that customer complaints dated post-purchase "undercut[s] the reliability of those two complaints as a source of pre-sale knowledge generally").

Second, Plaintiff's allegations of certain online postings and technician visits are insufficient to establish LG's knowledge of the Claimed Defect under Rule 9(b). *Wesley I* is on-point. *See* 2021 WL 5771738, at *2. In *Wesley I*, the Plaintiff asserted, *inter alia*, violations of the NJCFA as well as the FDUTPA, and a fraudulent omission claim (the same three fraud claims asserted here), against Samsung Electronics America, Inc. ("Samsung") based on the allegation that Samsung had failed to disclose that a temperature setting part in some of its gas and electronic ranges would eventually fail. *Id.* at *1. Plaintiff alleged Samsung was aware of this purported defect by pointing to allegations of "negative Internet reviews and direct complaints." *Id.* at *3. This Court rejected that argument, noting that the few reviews which pre-dated plaintiff's purchase were nothing more than a "handful of public complaints" on "third-party websites," which were not "sufficient to establish that Samsung had exclusive or superior knowledge of the alleged defect." *Id.*

As for the "direct complaints," this Court noted that Plaintiffs:

> do not provide any further details to substantiate their allegations regarding Samsung's internal knowledge. For example, Plaintiffs do not explain what the pre-release data indicated, how many warranty claims were submitted or repairs occurred, what models were allegedly experiencing problems, or how any of this information put Samsung on notice of the alleged defect. Plaintiffs also allege that certified appliance technicians observed the sensor and control boards "failing at a high rate." Plaintiffs, however, fail to allege that this information was ever communicated to Samsung.

*Id.* (internal citations omitted). Hence, with no credible allegation of Samsung's superior or exclusive knowledge of the purported defect, the court dismissed the fraud by omission claim, *id.* at *3-5, as well as the NJCFA and FDUTPA claims. *Id.* at *5; *see also Grisafi*, 2020 WL 7074725, at *5 (failing to allege defendant's knowledge of the alleged defect was fatal to plaintiff's omission claims); *Mehnert*, 2018 WL 1942523, at *8 ("Plaintiff's vague allegation that Defendant was aware of 'irregularities regarding the alleged loan to Plaintiff,' and that [p]laintiff 'relied upon Defendants' [sic] representations that their inquiry was being reviewed and investigated,' does not suffice to state a valid claim under the NJCFA.") (internal citations omitted). Likewise, as another court in this district explained:

> imputing knowledge of a defect to a manufacturer based upon an internet posting would mean "that virtually every consumer product company would be subject to fraud claims and extensive discovery. All any plaintiff would be required to show is that a product broke once and that someone had complained about it on the internet."

*Oliver v. Funai Corp.*, Inc., No. 14-CV-04532, 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015) (quoting *Rait v. Sears, Roebuck and Co.*, No. 08-2461, 2009 WL 2488155, at *4 (D.N.J. Aug. 11, 2009)). The reed-thin allegations of LG's knowledge here – based on nothing more than anonymous internet postings, and purported visits by unspecified LG "certified" technicians – are woefully insufficient to establish LG's "knowledge" of the Claimed Defect.

Finally, Plaintiff cannot claim that public internet postings which pre-date his purchase demonstrate LG's knowledge without conceding that the same was available to him pre-purchase as well – cratering any claim of concealment, or that the knowledge of the Claimed Defect was "exclusive" to LG. Fraudulent omissions claims are subject to dismissal where those claims are based on publicly available information. *See, e.g.*, *In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, No. CIV 08-939 (DRD), 2009 WL 2940081, at *12 (D.N.J. Sept. 11, 2009) ("In order to intend that others rely on the concealment of a fact, the fact must, of course, actually be *concealed*."). By alleging *public* internet posting as the basis of LG's "knowledge," Plaintiff concedes that "knowledge" was not exclusive. *See, e.g.*, Weske, 2012 WL 833003, at *5 ("Plaintiffs do not explain how such knowledge would be exclusively within Samsung's control . . . if Plaintiffs are aware of these customers and their early complaints, why would they not also have some beliefs or knowledge about the specific complaints made or who the customers targeted?").

22

Moreover, Plaintiff makes no allegation that LG attempted to remove, or otherwise conceal, these negative reviews purportedly related to the Claimed Defect. The opposite is true; Plaintiff alleges that: "in an Ask & Answer section for Range Model No. LSGL6337F, *an LG representative expressly acknowledges* that the company is aware that '[t]he knobs can be turned on inadvertently if you brush against them.'" FAC ¶ 66 (emphasis added).

It belies credulity for Plaintiff to argue that LG concealed the Claimed Defect, while relying on LG's alleged public disclosure of the same. The Court need not accept these allegations. *See Rait*, 2009 WL 2488155, at *3 (granting motion to dismiss and explaining that "some of the comments relied on were on Sears' own website for her to review prior to purchase; there is no allegation that Sears hid any complaints"). Plaintiff has failed to allege LG's "superior knowledge" of the Claimed Defect, as well as the lack of any attempt to "conceal" it. There was no "duty to disclose" and Plaintiff does not state a claim for omission.

### C.   The Consumer Protection Claims Fail for Several Reasons.

Plaintiff fails to properly plead NJCFA and FDUTPA claims.[8]

---

[8] To state a claim under the NJCFA, "a plaintiff must allege '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between' the two." *Salit Auto Sales, Inc. v. CCC Intelligent Sols. Inc.*, No. CV1918107JMVMF, 2021 WL 3783110, at *4 (D.N.J. Aug. 26, 2021) (Vazquez, J.) (quotation omitted). Meanwhile, "a consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual

### 1. Plaintiff Fails to Plead the Required Standard for "Ascertainable Loss" Under the NJCFA

Plaintiff has not alleged an ascertainable loss under the NJCFA. "To demonstrate an ascertainable loss, the plaintiff must establish an actual loss, that is quantifiable or measurable, or real and demonstrable, as opposed to hypothetical or illusory or 'speculative.'" *Salit Auto Sales*, 2021 WL 3783110, at \*4 (internal quotations omitted); *see also Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005). Ascertainable loss must be pled "with enough specificity as to give the defendant notice of possible damages." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 541 (D.N.J. 2011). "To meet the ascertainable loss hurdle for a case under the CFA, a plaintiff must establish either out-of-pocket loss or a demonstrated loss in value." *Rosenthal v. SharkNinja Operating LLC*, No. 16-1048, 2016 WL 5334662, at \*3 (D.N.J. Sept. 22, 2016). *Thiedemann*, 183 N.J. at 248 ("In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages.") "An out-of-pocket-loss theory will suffice only if the product received was essentially worthless." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015). With respect to a loss in value, "what

---

damages." *DFG Grp., LLC. V. Stern*, 220 So. 3d 1236, 1238 (Fla. Dist. Ct. App. 2017) (quotation omitted)).

New Jersey Courts require . . . is for the consumer to quantify the difference in value between the promised product and the actual product received." *Cohen*, 2022 WL 721307, at *27 (quotation omitted). Under such a theory, Plaintiff must allege "how much [he] paid" for his range "and how much other comparable [ranges] manufactured by [LG]'s competitors cost at the time." *See Hughes*, 2011 WL 2976839, at *16. Plaintiff has not carried this burden.

As a preliminary matter, Plaintiff cannot credibly allege that his Range is worthless, *see* FAC ¶ 7, because he openly acknowledges that he is (and other purchasers are) able to operate the Range normally. *See supra* 3, 6; *see also Mladenov*, 124 F. Supp. 3d at 375 (plaintiff's mere "dissatisfaction" with a product did not render it worthless for purposes of ascertainable loss). Plaintiff's only other pertinent allegation is his conclusory statement that "Plaintiff and Class Members have suffered ascertainable loss and other damages" because "[h]ad Plaintiff and Class Members known about the design Defects and accompanying safety risks, and/or that the Ranges did not operate as advertised, they would not have purchased the Ranges or would have paid less than they did for them." FAC ¶ 110. This does not meet the standard. *See, e.g.*, *Mladenov*, 124 F. Supp. 3d at 375 (holding that allegations that plaintiffs "would not have purchased" or "would not have paid as much for the products" were insufficient to allege ascertainable loss under NJCFA); *Waldron v. Jos. A. Bank Clothiers, Inc.*, No. 12-cv-02060 (DMC) (JAD), 2013 WL

12131719, at *4 (D.N.J. Jan. 28, 2013) (allegation that plaintiff "would have paid substantially less for the merchandise" but for the allegedly unlawful conduct was insufficient to allege ascertainable loss under the NJCFA). Plaintiff here has not alleged sufficient facts to quantify the difference in value between what he contends was promised relative to what he received; hence, his claim must be dismissed. *See, e.g.*, *Eberhart v. LG Elecs. USA, Inc.*, No. CV 15-1761, 2015 WL 9581752, at *4-5 (D.N.J. Dec. 30, 2015) (dismissing NJCFA claim because plaintiff had not "allege[d] a means of quantifying his loss"); *In re Toshiba Am.*, 2009 WL 2940081, at *13 (dismissing NJCFA claim for failure to allege cost difference and amount of purported "premium" paid); *Spera v. Samsung Elecs. Am., Inc.*, No. 2:12-CV-05412 (WJM) (MF), 2014 WL 1334256, at *6 (D.N.J. Apr. 2, 2014) (dismissing NJCFA claim because "Plaintiffs have not alleged how much they paid to purchase, repair or replace their washers").

### 2. Plaintiff Fails to Allege Actual Damages, as Required to Sustain an FDUPTA Claim.

Plaintiff's FDUTPA claim similarly fails because he has not alleged actual damages. There are two ways to measure actual damages in an FDUPTA claim: "(1) the value between what was promised and what was delivered; or (2) the total price paid for a valueless good or service." *White v. Samsung Elecs. Am., Inc.*, No. 17-1775, 2019 WL 8886485, at *4 (D.N.J. Aug. 21, 2019) (quoting *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016), *aff'd*, 703

F. App'x 814 (11th Cir. 2017)). "An out of pocket loss may include the entire purchase price of a product if the purchasers 'did not receive a refund and the seller's misrepresentations rendered the product essentially worthless.'" *White*, 2019 WL 8886485, at *3 (quoting *Hammer v. Vital Pharm., Inc.*, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012)).

As above, Plaintiff cannot credibly allege that the Range in question is worthless. *See supra* 25. Indeed, he states that "the Ranges have *far less value* than promised at the point of sale," (emphasis supplied) and that "Plaintiff and the Florida Subclass members who purchased the Ranges would not have purchased them or would have paid significantly less if the Defect had been disclosed." FAC ¶¶ 7, 178. Because Plaintiff has not alleged the value of the Range he purchased relative to the one he claims not to have received, he fails to meet the required standard under the FDUTPA. *See White*, 2019 WL 8886485, at *4 ("White's FDUTPA claim fails for the same reason as Cauley's NJCFA claim: he has not alleged his actual damages. . . . White has not alleged that the Smart TVs in question were worthless, but rather alleges that the tracking feature impaired the value of the televisions. Because he has not alleged the value of the television that he did receive, he cannot state a claim under the FDUTPA.") As in *White*, Plaintiff's FDUTPA claim here should be dismissed alongside his NJCFA claim.

**D.     The Economic Loss Doctrine Bars the Fraud by Omission Claim.**

Plaintiff's fraud by omission claim is also subject to dismissal because it is barred by the economic loss doctrine, which precludes recovery in tort for claims arising from the same set of facts as claims sounding in contract. *See Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224 (S.D. Fla. 2017) ("Florida's economic loss rule applies in products liability cases to preclude recovery of economic damages in tort where there is no property damage or personal injury") (internal quotation omitted). The rule applies here because Plaintiff is relying on the same allegations to support his contract-based claims based on express and implied warranties, FAC ¶¶ 142-62, as he is doing with his fraud by omission claim, *id.* ¶¶ 132-41. Hence, the fraud by omission claim is barred.

**IV.    PLAINTIFF DOES NOT SUFFICIENTLY STATE A CLAIM FOR BREACH OF EXPRESS OR IMPLIED WARRANTY**

**A.     Plaintiff Fails to State an Express Warranty Claim as the LG Materials and Workmanship Warranty Does Not Extend to Design Defects.**

In the FAC, the sole express warranty identified by Plaintiff is the written LG Warranty. *See* FAC ¶¶ 144-46 ("LG's Warranty provides in relevant part that the Ranges are warranted by LG against defects in materials or workmanship for one year from the date of original retail purchase.")  Dismissal of Plaintiff's express warranty claim is therefore appropriate because Plaintiff predicates his claims on alleged *design* defects,  *see, e.g.*, *id.* ¶ 2 ("All of the ranges . . . are identically or

similarly ***designed*** and, as a result, are prone to, and do, rotate as a result of minor, inadvertent contact causing them to unintentionally actuate") (Emphasis added.); *id.* at ¶ 42 ("[t]he ***design*** of the Ranges puts no space between the consumer and the hazard") (emphasis added), which are outside the scope of the LG Warranty. Instead, the LG Warranty provides coverage for any "defect in *materials or workmanship* under normal use." Wilkinson Decl. Ex. A at 73 (emphasis added). "Express warranties covering defects in materials and workmanship *exclude defects in design*." *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013) (emphasis added); *see also, e.g.*, *Tull Bros. v. Peerless Prods., Inc.*, 953 F. Supp. 2d 1245, 1257 (S.D. Ala. 2013) ("A written warranty against defects in materials or workmanship does not encompass a warranty against defects in design."). This distinction between design and manufacturing defects is recognized by Florida courts. *See, e.g.*, *Ford Motor Co. v. Hill*, 404 So. 2d 1049, 1051 (Fla. 1981) (distinguishing "manufacturing flaws," "where products do not conform to planned specifications due to manufacturing error," from "design defects," which occur "where products are produced as designed but the design itself is defective").[9]

---

[9] Some courts, including this one, have declined to resolve this issue at the pleading stage where ambiguity exists as to whether the alleged defect is one of design or manufacture. *See, e.g.*, *Wesley v. Samsung Elecs. Am., Inc.* (*"Wesley II"*), No. CV 20-18629, 2022 WL 16509541, at *6 (D.N.J. Oct. 28, 2022). Unlike *Wesley II*, however, there is no ambiguity here as to whether Plaintiff is alleging a design defect. Plaintiff's entire theory is that the Range has been designed improperly. *See*

Plaintiff's attempt to introduce ambiguity by shoehorning the words "manufacturing" and "materials and workmanship" into the FAC, as well as making the conclusory allegation that the alleged defect in the Range constitutes "a manufacturing defect wherein the Ranges differ uniformly from the manufacturer's intended result or design," *see* FAC ¶ 38, does not change this result. Setting aside Plaintiff's *explicit* allegations of a design defect, *see supra* 28-29, Plaintiff fails to allege in more than a conclusory fashion that "the unit in question deviates in quality and other performance standards from all of the other identical units," qualities which courts have persuasively found necessary to allege a *manufacturing* defect. *See, e.g.*, *Orange Transportation Servs., Inc. v. Volvo Grp. N. Am.*, LLC, 450 F. Supp. 3d 311, 318 (W.D.N.Y. 2020) (quotation omitted); *Chung v. Igloo Prod. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *14 (E.D.N.Y. July 8, 2022) ("Plaintiffs' allegation that the Product does not properly retain ice is properly characterized as a design defect because it is an alleged flaw inherent in the Product's intended operation and construction and not a deviation from other units."). Plaintiff's "offhand references to manufacturing defects" do not alter this conclusion. *Catalano v. MarineMax*, 590 F. Supp. 3d 487, 509 (E.D.N.Y. 2022); *accord Troup*, 545 F. App'x at 669.

---

FAC ¶ 3 ("The defective condition of the Ranges is the result of the low detent . . . force and tiny distance the burner control knobs need to travel to be turned to the 'on' position, which is inadequate to prevent unintentional actuation.").

**B.    Plaintiff's Implied Warranty of Merchantability Claims Fail Because He Does Not Allege That His Range is Unmerchantable.**

Plaintiff's implied warranty claim fails because he does not allege that his Range is unmerchantable. *See Dennis v. Whirlpool Corp.*, No. 06-80784-CIV, 2007 WL 9701826, at *6 (S.D. Fla. Mar. 13, 2007). In order to be merchantable, goods "must have passed without objection in the trade under the contract description, be of fair average quality, and be fit for the ordinary purposes for which such goods are used." *Bus. Radio, Inc. v. Relm Wireless Corp.*, 373 F. Supp. 2d 1317, 1322 (M.D. Fla. 2005) (internal quotation omitted), *aff'd*, 209 F. App'x 899 (11th Cir. 2006). "The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Wesley I*, 2021 WL 5771738, at *7 (applying Florida law) (internal quotation omitted); *see also Wyse v. Gerard Roof Prod.*, LLC, No. 3:19CV121-TKW-EMT, 2019 WL 7347179, at *2 (N.D. Fla. Nov. 12, 2019).

Plaintiff's specific allegation is of a single instance of his Range actuating inadvertently. This is not sufficient to state a claim for breach of the implied warranty of merchantability, particularly where Plaintiff acknowledges that he continues to cook with his Range. *Burdt v. Whirlpool Corporation* is on-point. No. C 15-01563 JSW, 2015 WL 4647929, at *6 (N.D. Cal. Aug. 5, 2015) (applying California law). In *Burdt*, plaintiff brought, *inter alia,* breach of implied warranty of merchantability claims against the manufacturer of an oven arising out of an incident where the

31

oven's roll-out rack slipped off the rack guides and collapsed, causing the dish which plaintiff's wife was cooking to spill over, resulting in first and second degree burns on her left arm and back. *Id.* at *1. As the court explained, this single instance of impaired (and even dangerous) use did not constitute a breach of the implied warranty of merchantability because there was no allegation that the oven could not be used for its normal purposes, despite the alleged safety risk:

> Although Plaintiff alleges a safety risk, he alleges a risk that does not make the whole product unfit to serve its ordinary purpose of cooking food. Even if the oven's roll-out rack does not operate as promised, the product does not breach the implied warranty of merchantability on that basis alone. Plaintiff used the Subject Oven for eleven months without incident and failed to provide specific examples of other incidents that support the inference that the oven cannot work in a safe manner.

*Id.* at *6 (internal citation omitted); *see also Charter Oak Fire Ins. Co. v. JP & WJ, Inc.*, 230 F. App'x 650, 652 (9th Cir. 2007) (applying Washington law and holding that "[a]lthough the evidence suggests that a purge system can play a significant role in improving the safety of a direct-fired oven, no evidence . . . establishes that the sale of a used oven without such a system is so unsafe as to constitute a lack of fitness for the oven's ordinary purpose.")

The same is true here – the allegation of a "defect" is a single instance of Plaintiff's range inadvertently actuating, without any further explanation. And, Plaintiff acknowledges that he "uses, *and at all times has used*, his Range *in a normal and expected manner*." FAC ¶ 24 (emphasis added). Accordingly, Plaintiff has

32

continued to use his Range normally since he purchased it over a year ago. And nowhere in the FAC does Plaintiff allege that the August 5, 2022 incident rendered the Range inoperable.[10] Under those circumstances, the Range is "merchantable."

Nowhere in the FAC does Plaintiff allege, in more than a conclusory fashion, that the Range does not cook, or that it is not safe to use while cooking. Nor does he allege that he used the Control Lock feature and it failed him. *See supra* 3-4, n.3; *see also, e.g.*, *Dennis*, 2007 WL 9701826, at *6 (dismissing merchantability claims where "Plaintiffs have not alleged that any hairline cracks prevented their own refrigerators from performing the ordinary, intended purpose of keeping food cool and fresh, nor have they alleged that they had to or did replace the refrigerators because they no longer were performing their ordinary, intended purpose"); *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 967, 979 (C.D. Cal. 2014) (finding car was still fit to drive despite defect in optional, advanced safety features available for certain Prius vehicles); *compare Wesley*, 2021 WL 5771738, at *7. Plaintiff's claim for breach of the implied warranty of merchantability should be dismissed.

---

[10] To that end, the Court need not credit Plaintiff's conclusory, and contradictory, allegation that "[a] range that turns on without a consumer's knowledge has no value because it cannot be used safely." FAC ¶ 7; *see Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417  (3d Cir. 1997) (declining to accept as true internally inconsistent allegations in a complaint). Particularly when he concedes that he continues to use it regularly.

### C.     Plaintiff's Warranty Claims Fail For Lack Of Pre-Suit Notice.

Finally, Plaintiff's warranty claims fail because he does not allege that he provided LG with the requisite pre-suit notice under Florida law. *See, e.g.*, *Jackmack,* 2021 WL 1020981, at *3 ("Florida law bars a buyer from remedy for breach of an express warranty when the plaintiff fails to notify the seller 'within a reasonable time after he or she discovers or should have discovered any breach . . . .'") (quoting Fla. Stat. § 672.607(3)(a)); *Chapman*, 930 F. Supp. 2d at 1325 (dismissing implied warranty claims for failure to allege pre-suit notice). Plaintiff's sole allegation, that he "is not required to give notice to LG, a remote manufacturer, and LG has had notice of the type and source of claims in this matter for years," FAC ¶ 160, is unavailing.

First, the allegation that Plaintiff is not required to give notice to LG as a "remote manufacturer" lacks merit. This premise is derived from the unpublished opinion in *Federal Insurance Company v. Lazzara Yachts of North America, Inc.*, No. 09-607, 2010 WL 1223126, at *5 (M.D. Fla. Mar. 25, 2010), which has been called into question by subsequent cases. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 227 (E.D. Mich. 2020) (observing that the *Lazzara* "holding is poorly reasoned and uncorroborated by any controlling decisions of Florida's native courts," with a "logically unsound" conclusion); *see also In re Toyota Motor Corp.*, No. 10-ml-2151, 2012 WL 12929769, at *25 (C.D.

Cal. May 4, 2012) (comparing *Lazarra* to, *inter alia, Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1331 (S.D. Fla. 2011), and dismissing claim brought by consumer against manufacturer because of consumers failure to give notice pursuant to § 2-607(3)(a)), and because "the conclusion reached by the [*Jovine* court] is more persuasive" than the holding of *Lazarra*).

Second, it is unclear how LG "had notice of the type and source of claims in this matter for years." To the extent that this is based on the FAC's proffered complaints and online postings, "other owners' complaints and requests for service" do not suffice as notice under Florida law. *Dennis*, 2007 WL 9701826, at *5.

## V. PLAINTIFF'S MAGNUSON-MOSS WARRANTY ACT CLAIM FAILS TO MEET THE STATUTORY JURISDICTION REQUIREMENTS AND FAILS TO STATE A CLAIM

The MMWA provides a federal private cause of action for a warrantor's failure to comply with a "written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). The MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). Plaintiff's claim fails for two reasons: (i) Plaintiff does not meet the jurisdictional requirements, and (ii) the claim fails alongside the state-law warranty claims.

Plaintiff's MMWA claim does not meet the statutory jurisdictional requirement. An action under the MMWA that is brought in federal court as a class

action must name at least one hundred plaintiffs. See 15 U.S.C. § 2310(d)(3)(C) ("No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."). Plaintiff, who has only named himself, falls well short of this jurisdictional and statutory threshold.

Although Plaintiff claims that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, FAC ¶ 9, courts in this district and elsewhere have held that CAFA does not supplant the MMWA's jurisdictional requirements. *See, e.g., Simner*, 2022 WL 3152707, at *10 (holding that plaintiffs "may not use CAFA as a means to evade the explicit jurisdictional requirements of the MMWA"); *accord Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020).

Additionally, Plaintiff's MMWA claim independently fails because Plaintiff has failed to plead any viable state law warranty claim. *See supra* 28-35. This is fatal to his MMWA claim, because "[a] plaintiff's claim under the MMWA is viable only if the plaintiff also has stated a valid breach-of-warranty claim under state law." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 510 F. Supp. 3d 1141, 1172-73 (S.D. Fla. 2020). As the underlying state-law claims are due to be dismissed, the MMWA claim should be dismissed, as well. *Id.*; *see also Amara v. Publix Supermarkets, Inc.*, No. 8:22-CV-367-VMCJSS, 2022 WL 3357575, at *5 (M.D. Fla. Aug. 15, 2022) ("[A]

breach of warranty claim under the MMWA is dependent upon a viable underlying state breach of warranty claim."); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F.Supp.3d 194, 224 (D.N.J., 2020) (dismissing MMWA claim because the court also dismissed plaintiffs' breach of warranty claims).

## VI.    THE FAC DOES NOT STATE A CLAIM FOR UNJUST ENRICHMENT

Last, Plaintiff's claim for unjust enrichment should be dismissed as barred by the existence of the LG Warranty; because it is duplicative of his other claims; because it is predicated on the same baseless theory of deception as his fraud based claims; and because Plaintiff fails to allege that he conferred a direct benefit to LG.[11] "'[A] party may not maintain an action for unjust enrichment if the damages sought are covered by an express contract,' such as a written warranty." *See PB   Prop. Mgmt., Inc. v. Goodman Mfg. Co*., L.P., No. 3:12-CV-1366-J-20JBT, 2013 WL 12172912, at *7 (M.D. Fla. Aug. 28, 2013), (citation omitted). Plaintiff acknowledges the existence of, and has brought claims under, the LG Warranty, which is an express contract between the parties. FAC ¶ 21-22, 68, 142-50. Because there is no dispute over the existence of the LG Warranty, Plaintiff cannot recover

---

[11] "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021).

under an unjust enrichment theory. *See Wyse*, 2019 WL 7347179, at *5 (dismissing unjust enrichment claim because "there is no dispute that a valid contract (the lifetime warranty) exists, but, instead, a dispute over whether the warranty covers the claim at issue").

Additionally, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action' and warrants dismissal." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) (citing *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013)); *Jovine*, 795 F. Supp. 2d at 1342 ("[A]lthough a plaintiff ordinarily may plead in the alternative, here, if Plaintiff cannot prevail with his available legal remedies, he cannot prevail on his unjust enrichment claim."). Here, Plaintiff's unjust enrichment claim relies on the same factual predicate as all of the other claims and, therefore, it is not a true alternative theory of relief. *See* FAC ¶¶ 182-89. It should be dismissed on that ground alone.

Moreover, Plaintiff's unjust enrichment claim suffers fails because it relies on the same insufficient theory of deception as his other claims. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356-57 (S.D. Fla. 2012) ("Plaintiff seeks recovery for the exact same wrongful conduct as in her FDUTPA claim . . . . if Plaintiff cannot prevail on her FDUTPA claim, she cannot prevail on her unjust enrichment claim.").

Finally, Plaintiff's unjust enrichment claims against LG fail because Plaintiff does not allege that he conferred a direct benefit on LG.  Plaintiff purchased the Product from Best Buy, FAC ¶ 19, not LG.  At most, Plaintiff has alleged that he conferred an "*indirect* benefit" to LG and, as such, cannot satisfy the first element of an unjust enrichment claim.  *See Marrache*, 17 F.4th at 1101 (emphasis added) (citing *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009)).

## <u>CONCLUSION</u>

As discussed above, Plaintiff's FAC fails to state a claim for relief. Plaintiff has already amended his claims once, with the benefit of reviewing LG's prior motion. *See* ECF No. 7-1. Hence, the FAC should be dismissed with prejudice and without leave to replead.

Dated:    New York, New York
             January 20, 2023

**HOGAN LOVELLS US LLP**

By: _____
Allison M. Wuertz
allison.wuertz@hoganlovells.com
Phoebe A. Wilkinson *(Pro Hac Vice Application To Be Submitted)*
phoebe.wilkinson@hoganlovells.com
Daniel Petrokas *(Pro Hac Vice Application To Be Submitted)*
daniel.petrokas@hoganlovells.com

390 Madison Avenue
New York, NY 10017
(212) 918-3000 (p)
(212) 918-3100 (f)

*Attorneys for LG Electronics U.S.A., Inc.*