**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEDRO BRITO, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>LG ELECTRONICS USA, INC. AND LG ELECTRONICS INC.,<br><br>*Defendants*. | Civil Action No. 22-5777<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This class action lawsuit alleges that Defendants knew, but failed to disclose, that the control knobs on some of their gas and electric ranges were defective. Currently pending before the Court are the motions of Defendant LG Electronics USA, Inc. ("LG") to compel arbitration, D.E. 6, and to dismiss, D.E. 27.[1] The Court reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, LG's motion to compel arbitration is **GRANTED**, LG's motion to dismiss is **DENIED** as moot, and the matter is **STAYED** pending arbitration.

---

[1] The motion to compel arbitration maintains that all claims should be dismissed, or in the alternate, stayed, pending resolution of any arbitration. D.E. 6-1 at 22 (citing 9 U.S.C. § 3).

[2] LG's brief in support of its motion to compel will be referred to as "LG MTC Br." (D.E. 6-1); Plaintiff's opposition will be referred to as "Plf. MTC Opp." (D.E. 18); and LG's reply will be referred to as "LG MTC Reply" (D.E. 26). The Court also reviewed LG's brief in support of its motion to dismiss, D.E. 27-1, Plaintiff's opposition, D.E. 30, and LG's reply, D.E. 31.

I.  **FACTUAL BACKGROUND**[3]

Plaintiff, a Florida resident, purchased an LG electric range (the "Range")[4] with front-mounted burner knobs from a Best Buy store in Miami, Florida on or around November 6, 2021. FAC ¶¶ 12, 19, 34. Before purchasing the Range, Plaintiff reviewed the marketing materials and was informed by the Best Buy salesperson that the Range was covered by a one-year warranty (the "Limited Warranty"). *Id.* ¶¶ 20-21. The warranty was included in the Range's Owner's Manual that came with Plaintiff's Range, and it provides that LG warrants against defects in materials and workmanship for one year. *Id.* ¶ 22; *see also* Ex. A at 77.

After purchasing the Range, Plaintiff "began noticing that his Range would turn on inadvertently and without warning." *Id.* ¶ 25. On August 5, 2022, the Range "actuated without [Plaintiff's] knowledge," and after smelling smoke, Plaintiff returned to his kitchen to find a bag, which was left adjacent to the Range's cooktop, on fire. *Id.* ¶ 26. Plaintiff contacted LG to address the issue. *Id.* ¶ 27. In or around August or September 2022, a service technician made two trips

---

[3] The factual background is taken from Plaintiff's First Amended Complaint ("FAC"), D.E. 17. When reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the Complaint and take judicial notice of matters of public record. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Accordingly, the Court considers the Limited Warranty ("Limited Warranty"), which was submitted as an exhibit to LG's brief, and is available online. *See* D.E. 6-4 ("Ex. A"), D.E. 6-5 ("Ex. B"); *see also Koons v. Jetsmarter, Inc.*, No. 18-16723, 2019 WL 3082687, at *2 (D.N.J. July 15, 2019) (considering the parties' agreement, which contained the arbitration provision at issue, in deciding the defendants' motion to dismiss and compel arbitration); *Bravetti v. Liu*, No. 12-7492, 2015 WL 1954466, at *1 n.1 (D.N.J. Apr. 29, 2015) (taking judicial notice of, *inter alia*, a screenshot of a party's website).

[4] The Range's model number is LSEL6335F. Plaintiff alleges that the model numbers at issue "include, but are not limited to: LSEL6335F, LSEL6335D, LSEL6337F, LSEL6333D, LTE4815BD, LSE4616BD, LSE4611ST, LSE4617ST, LDG4313ST, LDE4413ST, LSE4613ST, LSG4513ST, and all other models (discontinued or still available for sale) containing substantially similar front-mounted burner controls, which all have a similar actuation mechanism." *Id.* ¶ 35.

to Plaintiff's home. *Id.* ¶ 28. During the first visit, the technician "allegedly placed an order for parts that were supposed to address" the issue, but during the second visit, the technician informed Plaintiff that "LG did not have any fixes for the Defect" and recommended that Plaintiff "remove the Range knobs when the appliance was not in use." *Id.* ¶¶ 29-30.

Plaintiff alleges that the Range is defective because the control knobs "are prone to, and do, rotate as a result of minor, inadvertent contact," which causes the Range to "actuate without warning." *Id.* ¶ 1. Plaintiff adds that this "is the result of the low detent (catch that prevents motion until released) force and tiny distance the burner control knobs need to travel to be turned to the 'on' position," and the failure to have necessary guards on the control knobs. *Id.* ¶¶ 3-4, 41-42. As a result, Plaintiff continues, gas Range burners ignite and electric Range cooktops heat up without warning. *Id.* ¶ 1. Plaintiff further alleges that LG knew of the defect since at least 2016, failed to disclose the defect, and continues to manufacture and sell ranges with the defective knobs. *Id.* ¶¶ 6, 46-47, 75. Had Plaintiff known of the defect, he would not have purchased the Range or would have paid a significantly lower price. *Id.* ¶ 33.

The Limited Warranty provides a one-year warranty from the date of purchase should the Range "fail due to a defect in materials or workmanship under normal and proper use." *Id.* ¶ 68; *see also* Ex. A at 74. Under the warranty, LG "will, at its option, repair or replace" the Range and "will provide, free of charge, all labor and in-home service to replace defective part(s)." Ex. A at 74. The Limited Warranty also states, directly below the "Terms and Conditions" header at the top of the page:

> **ARBITRATION NOTICE: THIS LIMITED WARRANTY CONTAINS AN ARBITRATION PROVISION THAT REQUIRES YOU AND LG TO RESOLVE DISPUTES BY BINDING ARBITRATION INSTEAD OF IN COURT, UNLESS YOU CHOOSE TO OPT OUT. IN ARBITRATION, CLASS ACTIONS AND JURY TRIALS ARE NOT**

3

> **PERMITTED.  PLEASE SEE THE SECTION TITLED "PROCEDURE FOR RESOLVING DISPUTES" BELOW.**

*Id.* (emphases in original).  The "Procedure for Resolving Disputes" section in turn provides as follows:

> ALL DISPUTES BETWEEN YOU AND LG ARISING OUT OF OR RELATING IN ANY WAY TO THIS LIMITED WARRANTY OR THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION, AND NOT IN A COURT OF GENERAL JURISDICTION.  BINDING ARBITRATION MEANS THAT YOU AND LG ARE EACH WAIVING THE RIGHT TO A JURY TRIAL AND TO BRING OR PARTICIPATE IN A CLASS ACTION.

*Id.* Ex. A at 77 (emphases in original).  The section directly below the "Procedure for Resolving Disputes" is titled "Definitions" and states that

> [f]or the purposes of this section . . . references to "dispute" or "claim" shall include any dispute, claim, or controversy of any kind whatsoever (whether based in contract, tort, statute, regulation, ordinance, fraud, misrepresentation, or any other legal or equitable theory) arising out of or relating in any way to the sale, condition or performance of the product of this Limited Warranty.

*Id.* However, the "Opt Out" section provides, in relevant part as follows:

> You may opt out of this dispute resolution procedure.  If you opt out, neither you nor LG can require the other to participate in an arbitration proceeding.  To opt out, you must send notice to LG no later than 30 calendar days form the date of the first consumer purchaser's purchase of the product.

*Id.* at 78.  Finally, the Limited Warranty contains a "Governing Law" section, which states that

> [t]he law of the state of your residence shall govern this Limited Warranty and any disputes between us except to the extent that such law is preempted by or inconsistent with applicable federal law.

*Id.* at 78.  The Limited Warranty was included in the Owner's Manual for the model Range purchased by Plaintiff.  FAC ¶ 68; *see also* Ex. A.  In addition, since at least 2018, a notice ("Arbitration Notice") has been printed on the outside of each electric range box and taped to the

front of each electric range. Declaration of Alisa Baker at ¶ 3 (D.E. 6-2).[5] The Arbitration Notice states (in English, French and Spanish) as follows:

> By using this product, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual basis. The terms of the arbitration agreement (including details on the procedure for resolving disputes is available at www.lg.com/us/arbitration (USA) or www.lg.com/ca_en/arbitration (Canada) and/or your owner's manual or warranty.

*Id*. at ¶¶ 4-6.

## II.     PROCEDURAL HISTORY

Plaintiff filed this class action on September 29, 2022. D.E. 1. On November 14, 2022, LG moved to dismiss and to compel arbitration, D.E. 6, D.E. 7. Plaintiff then amended its Complaint ("FAC"), D.E. 17, and the motion to dismiss, D.E. 7, was denied as moot. The parties then stipulated to a revised briefing schedule for the motion to compel and the response to Plaintiff's FAC. D.E. 21.

Plaintiff brings allegations individually and on behalf of a nationwide class and/or Florida sub-class (collectively, the "Class").[6] The FAC asserts violations of the New Jersey Consumer Fraud Action ("NJCFA") and Magnum-Moss Warranty Act ("MMWA") on behalf of the nationwide class (Counts I and II, respectively), and the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") on behalf of the Florida subclass (Count VI). The FAC also asserts

---

[5] *See Lloyd v. Retail Equation, Inc.*, No. 21-17057, 2022 WL 18024204, at *8 (D.N.J. Dec. 29, 2022) ([T]he Court may properly consider the proffered declaration and exhibits in determining whether there existed reasonable notice and assent to the arbitration agreement.").

[6] The Nationwide Class is defined as "[a]ll residents of the United States and its territories who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale." FAC ¶ 86. The Florida sub-class is defined as "[a]ll residents of Florida who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale." *Id.*

5

claims of fraud by omission (Count III), unjust enrichment (Count VII),[7] and breach of express and implied warranty of merchantability (Counts IV and V, respectively) on behalf of the nationwide class, or in the alternate, the Florida subclass.

### III.     STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") "makes agreements to arbitrate enforceable to the same extent as other contracts." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) (citation omitted); *see also* 9 U.S.C. § 2. As a result, "federal law presumptively favors the enforcement of arbitration agreements." *Id.* at 178 (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir. 1998)). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Unless otherwise agreed, the arbitrability of a dispute is generally a question for judicial determination. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

On a motion to compel arbitration, the Court must consider two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (citing *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998)). ""[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)," the FAA favors resolving a motion to compel arbitration under a motion to dismiss standard. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013)

---

[7] The FAC indicates that the unjust enrichment claim is brought "in the alternative." FAC ¶¶ 182-189.

6

(internal quotation marks and citations omitted). The motion to dismiss standard will only be replaced by the motion for summary judgment standard if (1) the complaint—and documents relied on in the complaint—are unclear regarding whether the parties agreed to arbitrate; or (2) the non-moving party "has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue." *Id.* at 774-76. In such a scenario, "the court may authorize 'limited discovery' to resolve that narrow issue for purposes of deciding whether to submit the matter to arbitration." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020) (citing *Guidotti*, 716 F.3d at 776).[8]

Here, the motion to dismiss standard applies. For a complaint to survive dismissal under Rule 12(b)(6), it must contain enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted). The

---

[8] LG argues that Plaintiff's claims are subject to arbitration, whether analyzed under the motion to dismiss or the motion for summary judgment standard. LG MTC Reply at 4-10. Plaintiff refers to both standards but does not raise arguments as to which standard the Court should apply. *See* Plf. MTC Opp. at 6-7. Nevertheless, because Plaintiff challenges the validity of the agreement— an argument that a non-moving party may raise to replace the motion to dismiss standard with the motion for summary judgment standard—the Court addresses the distinctions between these standards and considers which standard is appropriate to apply here.

Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

IV.     ANALYSIS

    A. Applicable State Law

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Moon v. Breathless Inc.*, 868 F.3d 209, 212-13 (3d Cir. 2017) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, the parties dispute whether the Court should apply New Jersey law or Florida law to determine the enforceability of the arbitration provision. LG argues that pursuant to the choice-of-law section of the Limited Warranty, which provides that "[t]he law of the state of your residence shall govern this Limited Warranty and any disputes between us," Florida law applies because Plaintiff is a resident of Florida. LG MTC Br. at 8 (citing Ex. A at 78); FAC ¶ 12. Plaintiff counters that a traditional choice-of-law analysis is warranted to determine "whether, as a threshold matter, there was a contract in the first place," because if there was not, the choice-of-law provision contained within the document does not control. Plf. MTC Opp. at 7-8 (citing *Davis v. Dell, Inc.* No. 7-630, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007), *aff'd* 2008 WL 384387 (D.N.J. Aug. 15, 2008)).[9]

---

[9] Plaintiff proceeds with a traditional choice-of-law analysis, and accordingly applies New Jersey's "most significant relationship test." Plf. MTC Opp. at 7-8. Under this test, the court must first determine whether a conflict exists between the chosen state law and the law of the forum state, and if no such conflict exists, the law of the forum state is applied; however, if a conflict does exist, the court proceeds to determine which state has the "most significant relationship" to the claim at issue. *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 131-32 (D.N.J.

8

Plaintiff relies on *Davis v. Dell*. 2007 WL 4623030, at *3-4. In *Davis*, the parties disputed whether the agreement at issue applied to the plaintiff's product, and thus, whether the arbitration provision contained within the agreement applied to the plaintiff's claims. *Id.* at *1-2. The *Davis* court first considered the applicability of the agreement because if it did not apply, no further inquiry was necessary. *Id.* at *3-4. And to determine the applicability of the agreement, the *Davis* court applied New Jersey's "most significant relationship test," *id.*, which Plaintiff argues the Court should apply here. *See* Plf. MTC Opp. at 7-8. But unlike in *Davis*, the parties here do not dispute that the Limited Warranty is applicable to the product.[10] Plaintiff only challenges the enforceability of the arbitration provision. As a result, the second portion of the *Davis* analysis, which considers the enforceability of the arbitration provision, is relevant. *See Davis*, 2007 WL 4623030, at *6-8.

In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Davis*, 2007 WL 4623030, at *6 (citation omitted); *see also Moon*, 868 F.3d at 2120-12 (when deciding a motion to compel arbitration, courts should generally "apply ordinary state-law principles that govern the formation of contracts."). Under New Jersey law, a choice of law provision will be honored unless

> (1) the state chosen has no substantial relationship to the parties or the transaction [and there is no other reasonable basis for the parties' choice]; or

---

2020) (citations omitted). Plaintiff concludes—without analyzing the substance of each state's applicable laws—that no conflict exists and argues the remainder of the motion under New Jersey law. *See generally* Plf. MTC Opp.

[10] Indeed, the Limited Warranty serves as the basis for many of Plaintiff's claims. *See, e.g.*, FAC ¶¶ 21, 22 (acknowledging that the Limited Warranty "warrants against defects in materials and workmanship for one year," and that "[a]bsent this warranty, [Plaintiff] would not have purchased the [] Range."); *id.* at ¶¶ 27-30 (alleging that Plaintiff sought service pursuant to the terms of the Limited Warranty); *id.* at ¶¶ 68-71 (alleging that the service provided under the Limited Warranty is not adequate); *id.* at ¶¶ 142-150 (alleging breach of the Limited Warranty's express terms).

9

> (2) application of the law chosen would conflict with a fundamental public policy of a state having a greater interest in a determination of a particular issue and [the law] of such state would be applicable in the absence of the choice of law provision under the governmental-interest analysis.

*Id.* at *6 (citation omitted); *see also* Restatement (Second) Conflict of Laws § 187 (Am. L. Inst. 1971). Therefore, the Court must first determine whether Florida has a substantial relationship to the parties or their transaction. *See Davis*, 2007 WL 4623030, at *6. If the answer to the inquiry is no, the Court need not apply Florida law. *See id.* But if the answer is yes, the Court must then determine whether Florida law is contrary to a fundamental New Jersey policy. *See id.* If no such conflict exists, the Court will enforce the parties' choice of Florida law.

Here, the first prong is readily met: Plaintiff is a resident of Florida, and Plaintiff purchased and used the Range in Florida. FAC ¶¶ 12, 19; *see also* Restatement (Second) Conflict of Laws § 187 cmt. f (Am. L. Inst. 1971) ("[T]he parties will be held to have had a reasonable basis for their choice [of law] . . . when th[e] state is that where performance by one of the parties is to take place or where one of the parties is domiciled."). Turning to the second prong, applying Florida law will not conflict with a fundamental New Jersey policy.[11] LG MTC Br. at 8-9 (citing *Koons v.*

---

[11] Plaintiff appears to concede this point. *See* Plf. MTC Opp. at 8 (concluding, albeit under the traditional choice-of-law analysis, that the law of New Jersey governs because "no conflict exists between Florida and New Jersey laws."). However, Plaintiff also raises enforceability arguments that rely, in part, on New Jersey's Plain Language Act, for which there is no parallel requirement in Florida. *See* Plf. MTC Opp. at 9-24. The Court does not find Plaintiff's reliance on New Jersey's Plain Language Act sufficient to establish that applying Florida law would conflict with a "fundamental" New Jersey policy. Moreover, Plaintiff sets forth no basis to conclude that New Jersey has a "materially greater interest" than Florida in determining this particular issue. *See* Restatement (Second) Conflict of Laws § 187 cmt. g (Am. L. Inst. 1971) (explaining that "application of the chosen law will be refused only (1) to protect a fundamental policy of the state . . . of the otherwise applicable law, provided (2) that this state has a materially greater interest than the state of the chosen law in determination of the particular issue."); *see also id.* ("The more closely th[e] state [of the chosen law] is related to the contract and to the parties, the more likely it is that the choice-of-law provision will be given effect. The more closely the state of the chosen

10

*Jetsmarter, Inc.*, No. 18-16723, 2019 WL 3082687, at *4 (D.N.J July 15, 2019) (quoting *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002) ("[U]pholding a governing law provision mandating application of Florida Law will not violate New Jersey's public policy because both New Jersey and Florida 'favor[] arbitration as a mechanism [for] resolving disputes.'")). Thus, the Court determines the arbitrability of the claims under Florida law.[12]

### B.  Validity and Scope of Arbitration Provision

The Court next reviews (1) whether the parties seeking or resisting arbitration entered into a valid arbitration agreement; and (2) whether the dispute between those parties falls within the language of the arbitration agreement. *John Hancock Mut. Life Ins. Co.*, 151 F.3d at 137; *see also Dye v. Tamko Bldg. Prod., Inc.*, 275 F. Supp. 3d 1314, 1317 (M.D. Fla. 2017), *aff'd*, 908 F.3d 675 (11th Cir. 2018) ("Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.").[13] The Court must also determine whether the Rule 12(b)(6) motion to dismiss standard or the Rule 56 summary judgment standard is appropriate.

Here, because the affirmative defense of arbitrability is apparent on "the face of the [C]omplaint" or "documents relied upon in the [C]omplaint," the motion to dismiss standard

---

law is related to the contract and the parties, the more fundamental must be the policy of the state of the otherwise applicable law to justify denying effect to the choice-of-law provision.").

[12] In addition, the Court is not persuaded by Plaintiff's arguments that the arbitration provision would be invalid under New Jersey law. *See infra* n.18.

[13] The parties do not argue that the right to arbitrate was waived, and the Court sees no basis to find that there was a waiver.

11

applies. *Guidotti*, 716 F.3d at 773-74. Plaintiff alleges that the Range is defective, that he sought service under the Limited Warranty, and that LG has failed to adequately perform under the Warranty.[14] The Warranty provides that "all disputes . . . arising out of relating in any way to this limited warranty or the product shall be resolved exclusively through binding arbitration, and not in a court of general jurisdiction," which "means that [both parties] are each waiving the right to a jury trial and to bring or participate in a class action." Ex. A at 77 (emphases removed). It defines "disputes" as "any dispute, claim, or controversy of any kind whatsoever," "whether based in contract, tort, statute, regulation, ordinance, fraud, misrepresentation, or any other legal or equitable theory." *Id.* at 78. And Plaintiff, the non-moving party, has not come forward with "additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 774-76.

Under Florida law, a "'contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.'" *TracFone Wireless, Inc. v. Pak China Grp. Co.*, 843 F. Supp. 2d 1284, 1298 (S.D. Fla. 2012 (quoting Fla. Stat. § 672.204(1)). LG argues that a contract exists because Plaintiff purchased and retained the Range, admits that when he purchased the Range he was aware "that the Range was covered by a one-year warranty" that "was included in the user manual that came with his Range," and that "[a]bsent this warranty, [Plaintiff] would not have purchased the LG Range." LG MTC Br. at 10-12 (quoting FAC ¶¶ 21-22). LG adds that Plaintiff's assent is further demonstrated by his attempt to seek service under the Limited Warranty and to enforce the Limited Warranty in

---

[14] *See, e.g.*, FAC ¶ 1 (alleging that there is a design or manufacturing defect); ¶ 21 (alleging that "[a]bsent this warranty, [Plaintiff] would not have purchased the [] Range"); ¶¶ 27-30 (alleging that Plaintiff sought service pursuant to the terms of the warranty); *id.* at ¶¶ 68-71 (alleging that the service provided under the warranty is not adequate); *id.* at ¶¶ 142-150 (alleging breach of the Limited Warranty's terms).

12

this action. LG MTC Br. at 13-15. Finally, LG argues that there was valid consideration for the agreement because under Florida law, "the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same." LG MTC Br. at 15-16 (citing *Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1369 (S.D. Fla. 2008) ("[T]he arbitration clause is valid because all parties have provided consideration through their promises to submit to arbitration.")).

Plaintiff counters, under New Jersey law, that the agreement to arbitrate does not exist because LG fails to provide consumers with notice of the agreement, therefore there was no mutual assent. *See* Plf. Opp. at 12-24. Plaintiff contends that he did not see the Arbitration Notices and "did not know" that the Owner's Manual contained a binding arbitration agreement. *Id.* at 13, 18, 22; *see also* D.E. 18-1. Assuming that these representations are accurate, they are insufficient to "place the agreement to arbitrate in issue" because Plaintiff's actual awareness of the provision does not negate enforceability. *See Capezzuto v. Aruba Bay, Inc.*, No. 13-61897, 2014 WL 12580519, at *3 (S.D. Fla. Jan. 29, 2014) ("[F]ailure to read the Employee Handbook, or the arbitration policy contained within it, does not render the contract unenforceable.").[15]

Instead, the relevant inquiry is whether "a reasonably prudent user would be on inquiry notice of the terms." *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1029 (Fla. Dist. Ct. App. 2018) (internal quotation marks and citations omitted); *Kravets v. Anthropologie, Inc.*, No. 22-60443, 2022 WL 1978712, at *6 (S.D. Fla. June 6, 2022). Plaintiff contends that the various

---

[15] The same is true under New Jersey law. *See Vasadi v. Samsung Elecs. Am. Inc*, No. 21-10238, 2021 WL 5578736, at *11 (D.N.J. Nov. 29, 2021) ("Assent, or a meeting of the minds, is concerned with whether reasonable notice of a contractual term was provided, that is, with a party's constructive knowledge of the terms, *not with a party's diligence in reading those terms or subjective awareness of them*.") (emphases added).

13

means through which LG apprises purchasers of the arbitration provision are insufficient to put consumers on notice.  *See* Plf. MTC Opp. at 13-24.  Plaintiff takes issue with the Arbitration Notice that is provided on, and in, the Range's packaging,[16] arguing that it "neither looks like a contract nor [] call[s] the attention of the reasonable consumer" since it does not have a "capitalized and bold header" to capture the attention of a consumer, and because the "verbiage is vague and unclear."  Plf. MTC Opp. at 13-15 (citing *Vasadi*, 2021 WL 5578736, at *8-9).  According to Plaintiff, the Arbitration Notice also fails to "unambiguously convey" the distinction between agreeing to resolve a dispute in arbitration and in a judicial forum, as is required under New Jersey law and New Jersey's Plain Language Act.  *Id.* at 15 (citing *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 199 A.3d 766, 778 (N.J. 2019)).  Plaintiff adds that the hyperlinked terms also fail to make the notice effective because they are not immediately accessible in hard copy form.  *Id.* at 15-16; 21-22 (citing *James v. Glob. TelLink Corp.*, 852 F.3d 262, 263-68 (3d Cir. 2017).  Finally, Plaintiff turns to the Owner's Manual, arguing that it too fails to provide adequate notice because a document titled "Owner's Manual" "does not on its face provide . . . any warning that it contains

---

[16] The notice provided on the outside of the Range box and taped to the Range itself (inside of the box), reads as follows:
> By using this product, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual basis.  The terms of the arbitration agreement (including details on the procedure for resolving disputes) is available at www.lg.com/us/arbitration (USA) or www.lg.com/ca_en/arbitration (Canada) and/or your owner's manual or warranty.

D.E. 6-2 at ¶¶ 4, 6.

bilateral terms." *Id.* at 22-24 (citing *Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 117-18 (3d Cir. 2017); *Vasadi*, 2021 WL 5578736, at *10). [17]

LG responds that Plaintiff's objections to the Arbitration Notice—which are centered on Plaintiff's theory that it does not look "like a contract" and contains "confusing legalese"—are a red herring because Plaintiff does not contend that the notice itself constitutes the binding arbitration agreement. LG MTC Reply at 8, 10. LG emphasizes that it is the Limited Warranty, which is at the heart of Plaintiff's Complaint, that contains the agreement to arbitrate, and that the warranty sufficiently discloses Plaintiff's arbitration obligations. *Id.* at 8. In support, LG points to the bold arbitration clause at the top of the first page of the Limited Warranty, located under the "Terms and Conditions" header and the bold, capitalized header a few pages later, titled "Procedure for Resolving Disputes." *Id.* at 8-9. LG also points to the "Opt Out" clause and the Limited Warranty's explicit definition of "arbitration," which informs consumers that "binding

---

[17] In support of its notice arguments, Plaintiff relies primarily on four cases, each of which apply New Jersey law, and are distinguishable from the current matter. In *James*, the Third Circuit affirmed the finding that the appellants—prison inmates who had signed up over the phone for a prison phone service—did not agree to arbitrate claims with the phone service company because the terms were only made available at a hyperlink provided to them over the phone, and the pre-recorded message conveying the hyperlink gave no indication that the terms contained an arbitration agreement. 852 F.3d at 264-268. Here, in contrast, the Arbitration Notice notified consumers of the agreement to arbitrate and provided a hyperlink to its terms, and the terms were also made available in hard copy form in the Owner's Manual that comes with the Range. *See* D.E. 6-2 ¶¶ 4, 6; Ex. A. And unlike in *Noble*, where the packaging did not "provide[] a hint" as to the arbitration clause's existence, thus "the only manner in which a consumer could receive notice of the [arbitration] [c]lause . . . would be to read ninety-seven pages into the Guide," here, the Notice informs consumers of the agreement and directs them to the hyperlink and Owner's Manual to view the terms. 682 F. App'x at 116-18; D.E. 6-2 ¶¶ 4, 6. Likewise, in contrast to *Kernahan*, where the court found that the consumer could not have knowingly assented to arbitration because the provision discussed arbitration and mediation procedures interchangeably and thus contained "material discrepancies," here, no such discrepancies exist. 199 A.3d at 778-81. Finally, contrary to Plaintiff's assertions, the Court finds that the facts here are similar to those in *Vasadi*, where the court found that reasonable notice was provided, because as in *Vasadi*, the Range's packaging expressly references the arbitration agreement and "informs consumers where they may review full terms of the agreement." 2021 WL 5578736, at *8-10.

15

arbitration means that you and LG are each waiving the right to a jury trial and to bring or participate in a class action." LG MTC Reply at 8-10 (citing *Noonan v. Comcast Corp.*, No. 16-00458, 2017 WL 4799795, at *8 (D.N.J. Oct. 24, 2017) (finding that "[a]rbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury" adequately defines the obligation to arbitrate)).

LG adds that the on-the-box and in-the-box Arbitration Notice challenged by Plaintiff simply demonstrate that consumers are provided "reasonable notice" that the Owner's Manual and the Limited Warranty contain the arbitration clause. LG MTC Reply at 10-11. LG continues that even if the Court were to consider Plaintiff's challenges to the Arbitration Notice, including Plaintiff's contention that LG cannot "point to any efforts" to alert consumers of the binding agreement, this argument fails because the Notice states that "[b]y using this product, you agree that all disputes between you and LG . . . shall be resolved exclusively through binding arbitration on an individual basis." *Id.* at 12 (citing D.E. 6-2 ¶ 6). LG adds that the Arbitration Notice directs consumers to multiple places where they can access the arbitration provision, including the Owner's Manual, which is provided in hard copy form. *Id.* at 12 (citing D.E. 6-2 ¶ 6). Finally, LG counters that its placement of the arbitration provision on "page 73 of the 84-page user manual" is not dispositive because LG provides "ample notice" of the provision through other means, including the Manual's table of contents and the Arbitration Notice inside and outside of the packaging.[18] *Id.* at 13.

---

[18] LG adds that the Limited Warranty itself, while contained in the User Manual, is only six pages long, and that the arbitration provision is called out in bold type at the top of the first page, making it akin to the agreements that were upheld in *Vasadi* under New Jersey law and in *Fonte* under Florida law. *See* LG MTC Reply at 8-9 (citing *Vasadi*, 2021 WL 5578736, at *10-11 (finding that the six-page, in-the-box pamphlet, with a cover-page identifying it as "Terms and Conditions" was sufficient to put a reasonable consumer on notice of the contractual terms); *Fonte v. AT&T Wireless*

The Court agrees with LG. The numerous references to the arbitration clause (including the in-the-box and on-the-box Arbitration Notice), and the opportunities provided to review and opt out of the agreement to arbitrate, support a finding that Plaintiff had reasonable notice of, and assented to, the provision.[19] And Plaintiff's Complaint is devoid of any allegations that provide a basis to reject the defense of arbitrability. *Guidotti*, 716 F.3d at 774) (observing that under the motion to dismiss standard, the "question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis" for rejecting the affirmative defense (citation omitted)). Indeed, the conduct alleged by Plaintiff—purchasing and retaining the Range, acknowledging receipt of the Owner's Manual containing the Limited Warranty, seeking service under the Limited Warranty, and bringing claims to enforce the Limited Warranty—further support a finding of reasonable notice. Thus, a valid agreement to arbitrate exists.

Next, the Court considers whether Plaintiff's claims fall within the scope of the agreement. LG argues each claim falls within the arbitration provision's purview because it applies to "all disputes between you and LG arising out of or relating in any way to this Limited Warranty or the product." LG MTC Br. at 19-20 (quoting Ex. A at 76) (emphases removed). Plaintiff appears to concede that the fraud, unjust enrichment, and breach of warranty claims are encompassed by the provision. *See* Plf. MTC Opp. at 24-26. But Plaintiff argues that the statutory claims (for alleged

---

*Servs. Inc.*, 903 So. 2d 1019, 1026-27 (Fla. Dist. Ct. App. 2005) (finding that the plaintiff had adequate notice of the arbitration clause, which was on page 38 of the 40-page booklet, based in part on the notice provided to review the Terms and Conditions of the agreement).

[19] *See, e.g.*, *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028-29 (Fla. Dist. Ct. App. 2018) (finding that the plaintiff assented to the agreement, despite his decision not to review the terms and conditions, because he had multiple opportunities to review such terms via a hyperlink that was sent to his phone, and he was informed that such terms applied to his use of the service).

17

violations of NJCFA, MMWA, and FDUTPA) should be exempt from arbitration. *Id.* In support, Plaintiff contends that a party's waiver of statutory rights must be "clear and unmistakable," and that under New Jersey law, phrases such as "arising out of or relating in any way" fail to meet this standard. *Id.* at 24-25 (citing *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 436-37, 446 (2014); *FlagHouse, Inc. v. ProSource Dev., Inc.*, 528 F. App'x 186, 190 (3d Cir. 2017)). Plaintiff also directs the Court to cases that have found, under New Jersey law, that statutory remedies not explicitly included in an arbitration clause may not be subject to arbitration. *See id.* (citing *Flaghouse, Inc.*, 528 F. App'x at 190).

Plaintiff's analysis falls short. First, the "Definitions" section of the agreement *does* make explicit that statutory claims fall within the scope of the agreement to arbitrate.[20] And even if the provision had not done so, Plaintiff's authority indicates that this would not necessarily be dispositive as an agreement to arbitrate may still be "sufficiently broad to cover statutory claims" where it does not make a "limiting reference" to a contract. *See Moon*, 868 F.3d at 216 (citing *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 875 (N.J. 2002)). Furthermore, Florida law applies, and under Florida law, a broad arbitration clause may waive statutory claims where they arise from or relate to a contract containing an arbitration clause. *See, e.g.*, *Phillips v. Lyons Heritage Tampa, LLC*, 341 So. 3d 1171, 1176 (Fla. Dist. Ct. App. 2022), *review denied sub nom. Phillips v. Lyons Heritage of Tampa, LLC*, No. 22-918, 2022 WL 4939287 (Fla. Oct. 4, 2022) (applying a broad arbitration clause to compel arbitration for statutory claims because they had a significant

---

[20] *See* Ex. A at 77 (defining "disputes" as "any dispute, claim, or controversy of any kind whatsoever (whether based in contract, tort, *statute*, regulation, ordinance, fraud, misrepresentation, or any other legal or equitable theory) arising out of or relating in any way to the sale, condition or performance of the product or this Limited Warranty) (emphasis added).

18

relationship with a contract).  Accordingly, Plaintiff's claims fall within the scope of the arbitration agreement.

V.     **CONCLUSION**

For the reasons stated above, LG's motion to compel arbitration is **GRANTED**, LG's motion to dismiss is **DENIED** as moot, and the matter is **STAYED** pending arbitration.

Dated: March 29, 2023

_____
John Michael Vazquez, U.S.D.J.

19